# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2992

_____

Marlon Dale Sun Bear,

    Petitioner- Appellant,

v.

United States of America,

    Respondent - Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: January 10, 2011
Filed: July 12, 2011

_____

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, MELLOY,
SMITH, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit
Judges, *en banc*.

_____

LOKEN, Circuit Judge, with whom RILEY, Chief Judge, WOLLMAN, COLLOTON,
GRUENDER, and BENTON, Circuit Judges, join.

Marlon Dale Sun Bear pleaded guilty to the second-degree murder of his uncle
in Indian country. At sentencing, the district court[1] departed upward three levels
based upon Sun Bear's extensive and violent criminal history, resulting in a
sentencing range of 292 to 365 months in prison under the then-mandatory Sentencing

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the
District of South Dakota.

Guidelines. The court further ruled that Sun Bear's prior felony convictions for attempted escape, attempted theft of a vehicle, and attempted burglary of a commercial building were "crimes of violence" under U.S.S.G. § 4B1.2(a), resulting in a career offender enhancement that increased the guidelines range to 360 months to life. The court sentenced Sun Bear as a career offender to 360 months in prison.[2] Sun Bear appealed, arguing that he should not have been sentenced as a career offender because his three prior felonies were not crimes of violence. We affirmed, concluding that he was properly sentenced as a career offender because, although the attempted escape offense was not proved to be a felony, the felony convictions for attempted auto theft and attempted burglary constituted two crimes of violence warranting the career offender enhancement. United States v. Sun Bear, 307 F.3d 747, 753 (8th Cir. 2002) (Sun Bear I), cert. denied, 539 U.S. 916 (2003).

In November 2008, counsel for Sun Bear filed a 28 U.S.C. § 2255 motion to vacate his sentence, alleging that the career offender determination violated Begay v. United States, 128 S. Ct. 1581 (2008), as construed by a panel of this court in United States v. Williams, 537 F.3d 969 (8th Cir. 2008). There were three significant obstacles to the relief sought. First, the motion appeared to be untimely because it was not filed within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Second, the career offender issue was raised and rejected on direct appeal. With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal. See Davis v. United States, 417 U.S. 333, 346-47 (1974).[3] Third, the § 2255 motion was a collateral attack on the sentencing court's

---

[2]The court commented that it had "not seen a man this young have a criminal history of this type in the years that I've sat on the bench," and opined that Sun Bear was "more than a career criminal," having "done nothing his entire life other than attack people [and] steal their property."

[3]Had Sun Bear not raised this issue on direct appeal, this obstacle would have required him to avoid that procedural default using the cause and prejudice analysis mandated by Frady v. United States, 456 U.S. 152, 165-69 (1982). See Anderson v.

interpretation and application of the Guidelines, an attack this court, and most of our sister circuits, have never found "cognizable,"[4] as we discuss in Part II.

The District of South Dakota § 2255 form required Sun Bear to explain why his motion was timely. He alleged:

> This motion was filed within one year of the U.S. Supreme Court's decision in Begay v. United States [which] initially and newly recognized the right asserted herein. Consequently, the motion is timely filed pursuant to 28 U.S.C. § 2255(f)(3).[5]

The district court granted the government's motion to dismiss the motion as time-barred because, in the words of § 2255(f)(3), Begay did not initially recognize "a right . . . made retroactively applicable to cases on collateral review." Sun Bear v. United States, No. CIV 08-3021, Jul. 8, 2009 Opinion & Order (D.S.D.). Sun Bear appealed, and the district court issued a certificate of appealability on the retroactivity issue. A panel of this court reversed, concluding that Begay announced a new substantive rule that, under Teague v. Lane, 489 U.S. 288 (1989), retroactively applies to career offender decisions under the Guidelines. Sun Bear v. United States, 611 F.3d 925, 929 (8th Cir. 2010) (Sun Bear II). We granted the government's petition for rehearing en banc, vacated the panel opinion, and now affirm the district court's denial of § 2255 relief.

_____

United States, 25 F.3d 704, 706-07 (8th Cir. 1994).

[4]Cognizable has been defined as, "Capable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction." Black's Law Dictionary 295 (9th ed. 2009).

[5]Sun Bear further alleged that the decision in Begay uncovered a "fact" supporting his claim, making the motion timely under § 2255(f)(4). We agree with the district court that subsequent interpretations of the law "can be the basis of delay in filing a § 2255 motion only in accordance with § 2255(f)(3)."

# I. Retroactivity

In <u>Begay</u>, the Supreme Court held that a felony conviction for driving under the influence of alcohol is not a "violent felony" for purposes of 18 U.S.C. § 924(e)(2)(B)(ii), part of the Armed Career Criminal Act (ACCA). 128 S. Ct. at 1588. The effect of this ACCA provision is to increase the sentence of one convicted of being a felon in possession of a firearm from a statutory maximum of ten years in prison to a mandatory minimum term of fifteen years. <u>Compare</u> 18 U.S.C. § 924(a)(2), <u>with</u> § 924(e)(1). Under <u>Teague v. Lane</u>, a new rule of criminal procedure is not retroactively applied to collateral attacks on a final conviction unless it is a "watershed" rule. However, this principle does not apply to new substantive rules, that is, to "decisions that narrow the scope of a criminal statute by interpreting its terms . . . as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351-52 (2004) (citations omitted).

The government has conceded in § 2255 proceedings around the country that <u>Begay</u> announced a new substantive rule that should be applied retroactively if the application of § 924(e)(1) at issue increased the defendant's statutory maximum sentence, which will be true with many if not most felon-in-possession convictions. At least two of our sister circuits have so held. <u>See</u> <u>Welch v. United States</u>, 604 F.3d 408, 414-15 (7th Cir. 2010); <u>United States v. Shipp</u>, 589 F.3d 1084, 1090-91 (10th Cir. 2009) (applying <u>Chambers v. United States</u>, 129 S. Ct. 687 (2000), retroactively). We are inclined to agree with the proposition as limited in this manner, but it does not resolve the retroactivity issue presented in this case. Sun Bear is not relying on the *holding* in <u>Begay</u>. Rather, he argues for the retroactive application of our panel decision in <u>Williams</u> that the *reasoning* in <u>Begay</u> implicitly overruled our decision in <u>Sun Bear I</u> that a felony conviction for attempted auto theft is a crime of violence under the career offender provisions of the Guidelines. 537 F.3d at 971, 973-75. To sustain that contention, we would have to conclude that the Supreme Court's

reasoning in <u>Begay</u> was correctly construed by our panel in <u>Williams</u> *and* is a "right . . . newly recognized by the Supreme Court" for purposes of 28 U.S.C. § 2255(f)(3).[6] We decline to consider these issues because we agree with the government's alternative contention that Sun Bear's collateral attack on an application of the career offender guidelines provisions is not cognizable under § 2255.[7]

## II. Cognizability

Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." <u>Davis</u>, 417 U.S. at 343. Like habeas corpus, this remedy "does not encompass all claimed errors in conviction and sentencing." <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979). It provides a remedy for jurisdictional and constitutional errors, neither of which is at issue here. Beyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; "an error of law does not provide a basis for collateral attack unless

[6]<u>Williams</u> was Eighth Circuit precedent binding on the panel in this case, but it is not binding on the court en banc. There were five votes to grant rehearing en banc in <u>Williams</u>, one short of the number required for en banc review. We express no view as to whether <u>Williams</u> was a correct application of <u>Begay</u> except to note that the Supreme Court recently advised that the decision in <u>Williams</u>, like those of nearly all our sister circuits, "overreads" the significance of the phrase "purposeful, violent, and aggressive" in the <u>Begay</u> opinion. <u>Sykes v. United States</u>, No. 09-11311, slip op. at 10-11 (June 9, 2011). Moreover, whether new judicial interpretations of the career offender guidelines provisions are new substantive rules for retroactivity purposes is far from clear. See <u>Welch</u>, 604 F.3d at 413-14 n.7; <u>United States v. Giggey</u>, 551 F.3d 27, 36 n.3 (1st Cir. 2008).

[7]We reject Sun Bear's contention that the Government only argued harmless error to the panel. At page 16 of its brief to the panel, the government argued, "Sun Bear cannot demonstrate the application of the career offender enhancement resulted in a complete miscarriage of justice." That is a cognizability argument.

the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id., quoting Hill v. United States, 368 U.S. 424, 428 (1962).

These principles are reflected in the text of § 2255, which the Supreme Court described as "somewhat lacking in precision" in Davis, 417 U.S. at 343. A § 2255 motion may be filed by a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). The court shall grant appropriate relief if it finds "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b).

Applying these principles, this court and our sister circuits have consistently held "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim." Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995); accord United States v. Pregent, 190 F.3d 279, 284 (4th Cir. 1999), and cases cited; United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999); Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996). Therefore, such questions "may not be re-litigated under § 2255." United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000). Although decisions such as Auman have reserved judgment as to whether a misapplication of the Sentencing Guidelines could *ever* support § 2255 relief, 67 F.3d at 161, neither the parties' nor our own research have uncovered decisions in which a guidelines error was held to be a "complete miscarriage of justice" cognizable under § 2255 prior to the panel opinion in Gilbert v. United States, 609 F.3d 1159, 1163-67 (11th Cir. 2010), an opinion the

Eleventh Circuit vacated when it granted a rehearing en banc. Gilbert v. United States, 625 F.3d 716 (11th Cir. 2010). [8]

In this case, the panel concluded that the miscarriage-of-justice exception applies because Sun Bear's claim "is based on a post-conviction change in the law that renders unlawful the district court's sentencing determination." Sun Bear II, 611 F.3d at 930, citing Davis, 417 U.S. at 346-47. We disagree. Sun Bear's 360-month sentence is not unlawful. An unlawful or illegal sentence is one imposed without, or in excess of, statutory authority. United States v. Foster, 514 F.3d 821, 824 (8th Cir. 2008); United States v. Stobaugh, 420 F.3d 796, 804 (8th Cir. 2005) ("a sentence is not illegal . . . unless it exceeds the statutory maximum for the offense of conviction"), cert. denied, 546 U.S. 1120 (2006). Sun Bear's sentence is well-within the statutory maximum authorized for the offense of second-degree murder, see 18 U.S.C. § 1111(b), and in addition within the initial guidelines range of 292-365 months. Unlike cases such as Welch and Shipp, where applying the ACCA increased the

[8]The en banc court recently reversed the panel opinion on other grounds, declining to consider the issue we address -- "whether a claim that the sentencing guidelines were misapplied may be bought in a first time § 2255 motion." Gilbert v. United States, 2011 WL 1885674 at *29 (11th Cir. May 19, 2011).

For its contrary view, the dissent relies on the recent panel decision in Narvaez v. United States, 2011 WL 2162901 (7th Cir. June 3, 2011). Infra at n.4 & 8-9. Though factually distinguishable from this case because Narvaez was sentenced outside his then-mandatory unenhanced guidelines range, id. at *1, the Seventh Circuit panel's discussion is at least in tension with this opinion. Id. at *4. We respectfully disagree with that portion of its discussion. The government has advised that it intends to petition the Seventh Circuit for rehearing en banc in Narvaez.

The dissent also cites our unpublished opinion in Seebeck v. United States, 395 F. App'x 326 (8th Cir. 2010), for the proposition that a Begay retroactivity claim is cognizable under § 2255. But the panel in Seebeck simply followed the prior panel decision in Sun Bear II. Seebeck is hereby overruled.

defendant's statutory maximum sentence, the same 360-month sentence could be reimposed were Sun Bear granted the § 2255 relief he requests.[9] Thus, no miscarriage of justice is at issue.

The Supreme Court's opinion in <u>Davis</u>, on which the panel relied, is not to the contrary. Although the claim in <u>Davis</u>, like Sun Bear's claim, was based upon an "intervening change in the law," the Supreme Court explained in <u>Addonizio</u> that the miscarriage of justice in <u>Davis</u> resulted from "a change in the substantive law that established that the *conduct* for which petitioner had been convicted and sentenced was lawful." 442 U.S. at 186-87 (emphasis added). Here, Sun Bear's conduct was unlawful. This made his murder conviction and a 360-month sentence lawful, both at the time of his conviction and sentencing, and now.

Our cases applying the complete-miscarriage-of-justice exception in other contexts support this conclusion. In <u>Stobaugh</u>, 420 F.3d at 804, we concluded that enforcing an appeal waiver does not result in a miscarriage of justice unless the sentence imposed "exceeds the statutory maximum for the offense of conviction." <u>Accord</u> <u>United States v. Reynolds</u>, 432 F.3d 821, 824 (8th Cir. 2005); <u>United States v. Andis</u>, 333 F.3d 886, 892 (8th Cir.) (en banc), <u>cert. denied</u> 540 U.S. 997 (2003). In <u>United States v. Wiley</u>, 245 F.3d 750, 752 (8th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1083 (2002), we reversed the grant of § 2255 relief vacating a guidelines-range sentence because "the miscarriage-of-justice exception to the rule against relitigating

---

[9]Prior to enactment of the Sentencing Reform Act of 1984, Fed. R. Crim. P. 35(a) provided, "The court may correct an illegal sentence at any time . . . ." In the Reform Act, which established the Sentencing Guidelines, Congress took the unusual step of rewriting this rule of criminal procedure to eliminate Rule 35(a). Pub. L. No. 98-473, § 215(b), 98 Stat. 2015-16 (1984). This evidences an intent that applications of guidelines provisions not be subject to collateral attack beyond the boundaries of what Supreme Court decisions had confirmed were cognizable § 2255 claims -- errors that are jurisdictional, constitutional, or result in a complete miscarriage of justice. <u>See</u> <u>Scott v. United States</u>, 997 F.2d 340, 340-41 (7th Cir. 1993).

matters decided on direct appeal" applies "only when petitioners have produced convincing new evidence of actual innocence"; new evidence that defendant was "actually innocent of the sentence imposed" would not be sufficient because "the actual-innocence exception does not apply to noncapital sentences." See also Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("the miscarriage of justice exception is concerned with actual as compared to legal innocence"); Embrey v. Hershberger, 131 F.3d 739, 740-41 (8th Cir. 1997) (en banc), cert. denied, 525 U.S. 828 (1998).[10]

Abandoning the panel's view that Sun Bear's sentence was unlawful, the dissent "keys off" a statement in Hill, 368 U.S. at 428, repeated in United States v. Timmreck, 441 U.S. 781, 783 (1979), that "manifest injustice" includes "an omission inconsistent with the rudimentary demands of fair procedure." Infra at 7-8. Both Hill and Timmreck turned on procedural issues. This case does not. Sun Bear has been afforded fair procedure throughout his direct appeal and § 2255 proceedings. By focusing on this single phrase in an unrelated context, the dissent produces a "miscarriage of justice" discussion completely untethered to the basic principle that, in sentencing, a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law. Addonizio, 442 U.S. at 184. Unlike the panel, Sun Bear II, 611 F.3d at 930, the dissent shifts the analysis, equating "miscarriage of justice" with every substantive sentencing result that can be characterized, in hindsight, as lacking "rudimentary" fairness. We reject this open-ended expansion of the doctrine as contrary to controlling Supreme Court precedent. Moreover, when we take into account, first, that the 360-month sentence was both below the statutory maximum *and* within the unenhanced guidelines range as determined by the district court after applying an upward departure at the time of

---

[10]We have granted, on direct appeal, plain error review of some errors in applying the mandatory Guidelines. See United States v. Pirani, 406 F.3d 543, 553 (8th Cir.) (en banc), cert. denied, 546 U.S. 909 (2005). But the showing required for a collateral attack under § 2255 is greater than that required to establish plain error. Frady, 456 U.S. at 166.

sentencing, and second, that if granted § 2255 relief, Sun Bear would be resentenced under an advisory guidelines regime that permits an upward variance to 360 months even if the district court were persuaded to determine a lower advisory range, any notion that his sentence as a career offender resulted in a miscarriage of justice because it was lacking in rudimentary fairness evaporates.

For these reasons, the order of the district court denying Sun Bear's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is affirmed.

MELLOY, Circuit Judge, with whom MURPHY, BYE, SMITH, and SHEPHERD, Circuit Judges join, dissenting.

At sentencing and on direct appeal, Sun Bear correctly argued that he did not qualify as a career offender. We rejected his arguments, but the Supreme Court subsequently vindicated his position in an opinion addressing the same question of law. See Begay v. United States, 553 U.S. 137 (2008). That opinion has retroactive effect,[11] it is not clear the error below was harmless,[12] and Sun Bear has diligently

---

[11]The majority appears to reluctantly concede, as a general matter, that the limited holding of Begay has retroactive effect. The majority suggests, however, that the rule of Begay may not. I note, as a I did in Sun Bear II, that the government conceded to the court in argument that Begay has retroactive effect in this case. See Sun Bear II, 611 F.3d 925, 927 (8th Cir. 2010). Further, for the reasons set forth in that panel opinion, Begay would have retroactive effect in this case even in the absence of such a concession. Id. at 928–29.

[12]I note, as I did in Sun Bear II, that the government did not advance arguments alleging harmless error in Sun Bear's direct appeal. See Sun Bear II, 611 F.3d at 930 n.5. Rather, the government's first suggestion of harmless error appeared in arguments to the district court in the § 2255 proceedings that led to our opinion in Sun Bear II. Further, I interpret the arguments to the panel in Sun Bear II as containing a government concession that, if the error were *not* harmless, then the defendant's sentence would represent a miscarriage of justice. In fact, the government directed its

pressed his correct interpretation of the law at every available opportunity. It is "inconsistent with the rudimentary demands of fair procedure," Hill v. United States, 368 U.S. 424, 428 (1962), and therefore amounts to a miscarriage of justice to deny Sun Bear the retroactive benefit of the Court's opinion. Accordingly, I dissent. I would hold that Sun Bear's claim is cognizable pursuant to 28 U.S.C. § 2255(b) and that he is entitled to be resentenced.

The majority correctly notes that, as a general rule, run-of-the-mill sentencing errors are not cognizable in § 2255 proceedings. Neither our court nor the Supreme Court, however, has previously interpreted this general rule as being absolute. In our prior opinions, we carefully left open the possibility of exceptions as demanded by justice. Finally, the government has conceded that this case does not involve a run-of-the-mill sentencing issue.[13] For all of these reasons, as explained below, I would hold that denying relief in the present circumstances would result in a miscarriage of justice and that § 2255 permits a remedy. The contrary result dictated by the majority's holding promotes finality at the expense of justice in a situation where, unlike most AEDPA cases, there are no concerns of comity or federalism. Thus, I cannot join "[t]his . . . approach to sentencing claims [that] is nothing more than a judicial 'gotcha.'" Gilbert v. United States, ___ F.3d ___, 2011 WL 1885674, at *41 (11th Cir. May 19, 2011) (en banc) (Hill, J., dissenting).

---

arguments to the panel primarily towards establishing that the error was harmless. For the reasons I previously set forth in Sun Bear II, 611 F.3d at 931–32, the error was not, in fact, harmless.

[13]At oral argument, counsel for the government stated, "[W]e concede that the Begay issue is not a garden variety issue, particularly, in light of the circumstances of this case because of the fact it was objected to and appealed, and then timely brought up here, we submit that it is our position that would not be a garden variety, just a typical run of the mill Guidelines issue."

-11-

I.      Eighth Circuit Precedent: Exception to the General Rule

Although the en banc court is not strictly constrained by our prior opinions, I find it compelling that no such opinions preclude finding a miscarriage of justice in the present circumstances, i.e., where a challenged sentence results from a guidelines error but falls within the statutory range. The majority cites cases in which we defined the concept of a miscarriage of justice in other settings, but we have not previously applied those cases in the present context. In fact, the government's primary authority, Auman v. United States, 67 F.3d 157 (8th Cir. 1995), expressly leaves open this possibility, and in at least one similar case, we actually granted relief. Seebeck v. United States, 395 F. App'x 326 (8th Cir. 2010) (per curiam).

In Auman, the defendant pleaded guilty to a drug offense. The district court determined that prior convictions qualified as "either . . . crime[s] of violence or . . . controlled substance offense[s]." Id. at 159. On direct appeal, the defendant failed to contest these career-offender findings. The court of appeals affirmed as to the issues actually raised. The defendant then moved to have the district court vacate and reconsider his sentence pursuant to 18 U.S.C. § 3742(a), raising for the first time a challenge to the career-offender guideline determination. The district court looked at the conduct underlying the conviction, determined it was a crime of violence, and refused to grant relief. The defendant appealed, but we determined that the district court had lacked jurisdiction to entertain the order under 18 U.S.C. §§ 3582 and 3742. The defendant then filed a § 2255 motion challenging the career-offender determination as to one of the prior convictions.

The court of appeals rejected his challenge, due in large part to procedural default and the defendant's failure to preserve error, stating:

> *Auman's Sentencing Guideline claim is not properly brought under*
> *section 2255, but should have been raised on direct appeal.* See United

> States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995) ("Collateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal."). While section 2255 does provide relief for cases in which "the sentence was in excess of the maximum authorized by law," this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues.

Id. at 160–61 (emphasis added). The court continued its discussion, citing an earlier per curiam opinion which stated that a defendant could "'not obtain § 2255 relief for unappealed errors to which no contemporaneous objection was made unless he can show both cause and prejudice.'" Id. at 161 (quoting United States v. Wilson, 997 F.2d 429, 431 (8th Cir. 1993) (per curiam). The court noted, "As to the Sentencing Guidelines arguments, we affirmed the district court's holding that these claims should have been brought on direct appeal, and thus implicitly, that they did not fall within the section 2255 provision for sentences 'in excess of the maximum authorized by law.'" Id. (quoting Wilson, 997 F.2d at 431).

Finally, Auman cited authority from other circuits and noted general agreement "that issues of guideline interpretation do not constitute proper section 2255 claims unless they rise to the level of being a miscarriage of justice." Id. The court concluded by reserving ruling on the core issue of the present case:

> *[W]e reserve judgment on whether violation of the guidelines could ever be cognizable under section 2255.* We merely hold that ordinary questions of guideline interpretation falling short of the "miscarriage of justice" standard do not present a proper section 2255 claim. Auman's claim of error in interpreting the career offender guidelines does not present a cognizable claim.

Id. Auman, then, does not preclude relief in the present case, nor does it demonstrate that the miscarriage-of-justice "exception" in the sentencing-guideline context is to be equated solely with sentences outside the applicable statutory range, as held by the

-13-

majority today.  Rather, <u>Auman</u> expressly left open an exception as required by the ends of the justice and rested its holding on procedural default.

After <u>Auman</u>, our court repeatedly cited the general prohibition on § 2255 relief for run-of-the-mill sentencing errors, noted the exception for a miscarriage of justice, but found the exception inapplicable.  The court, however, has not firmly limited the miscarriage-of-justice exception to situations involving sentences outside the applicable statutory range, as suggested by the majority.  <u>Supra</u> at 7–8.  In <u>King v. United States</u>, 595 F.3d 844 (8th Cir. 2010), for example, the court faced a § 2255 claim related to a purported error in applying the guideline career-offender provisions.  As in <u>Auman</u>, the error was not preserved; it was raised for the first time in the § 2255 motion.  Again, the court stated a general rule, but employed the qualifying language saving an exception for miscarriages of justice:

> King cannot obtain relief on the basis of the guideline error alone, however, because he waived the right to bring all § 2255 claims except claims of ineffective assistance of counsel or prosecutorial misconduct. We have recognized in any case that "ordinary questions of guideline interpretation" are not remediable on a § 2255 motion *unless the error rises to the level of being a miscarriage of justice.* <u>Auman v. United States</u>, 67 F.3d 157, 161 (8th Cir. 1995). *This case does not rise to that extraordinary level.*

<u>King</u>, 595 F.3d at 852 (emphasis added).  Ultimately, the court in <u>King</u> provided relief, holding that the defendant should not have been bound to his plea waiver.  Like <u>Auman</u>, however, <u>King</u> involved issues of unpreserved error thus distinguishing that case from the present situation and providing no opportunity to determine whether a defendant's eventual vindication as to properly asserted and properly preserved arguments concerning the career-offender provisions should afford a basis for § 2255 relief pursuant to the miscarriage-of-justice exception.

-14-

At a minimum, <u>King</u> shows that it is proper to label some guidelines errors as involving miscarriages of justice. In addressing the impropriety of enforcing the waiver, the court in <u>King</u> applied plain error review. The final step of plain error review (integrity of judicial proceedings, etc.) is an articulation of a type of miscarriage-of-justice standard, and, in <u>King</u>, the court granted relief under plain error review due to the imposition of a *beyond-the-guideline-range* sentence. The court stated:

> The dismissal of King's direct appeal on the basis of an unenforceable waiver was plain error. Furthermore, there can be little doubt that the petitioner's substantial rights are affected if his prison sentence is longer than it should have been. But for the failure of King's counsel, the court would have reached the merits of his argument. *Since we now conclude that argument succeeds, it follows that there is a strong probability that but for the error he would have received a more favorable sentence.*
>
> Finally, we afford relief only where a plain error seriously affects the fairness, integrity or public reputation of judicial proceedings. *King received a sentence many years beyond the correct guideline range. He advanced pro se a meritorious argument which his lawyer ignored, and his appeal was summarily dismissed for an improper reason.* The error seriously affected the fairness and integrity of the proceedings, and we therefore find it proper to grant the relief King seeks.

<u>Id.</u> at 854 (internal quotation marks and citations omitted, emphasis added).

Even more recently, an Eighth Circuit panel granted relief based on a <u>Begay</u> retroactivity claim in the context of a § 2255 motion. <u>See</u> <u>Seebeck v. United States</u>, 395 F. App'x 326 (8th Cir. 2010) (per curiam). In <u>Seebeck</u>, which, again, did not involve preserved error, the court vacated and remanded because it appeared the district court had wrongly concluded <u>Begay</u> did not apply retroactively. Of course, if no sentencing error could ever qualify as a miscarriage of justice leading to § 2255 relief, it would have been unnecessary and improper to remand in <u>Seebeck</u>—there was no allegation that the sentence in <u>Seebeck</u> was outside the applicable statutory range.

-15-

<u>Seebeck</u>, then, although merely a per curiam, unpublished opinion, shows that <u>Begay</u>-type sentencing-guideline errors, even if not preserved, are not to be considered ordinary guideline errors and may be sufficient to meet the miscarriage-of-justice exception to the general bar on granting § 2255 relief in the context of non-statutory sentencing errors.[14]

II.    Miscarriage of Justice

Notwithstanding the absence of prior authority to support the majority's elimination of the often-referenced "exception," it remains necessary to determine whether a denial of relief in the present circumstances amounts to a miscarriage of justice.  In this regard, there is guidance from the Supreme Court as to how we should define the term "miscarriage of justice," in this and similar settings.

In <u>Davis v. United States</u>, 417 U.S. 333 (1974), the Court applied habeas standards in the context of a § 2255 motion challenging a conviction based on a law found invalid after resolution of a defendant's unsuccessful direct appeal.  Quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962), the Court stated, "[T]he appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t . . . present[s]

---

[14]The majority cites an absence of extra-jurisdictional authority holding a sentencing error may satisfy the miscarriage-of-justice exception.  I note, however, that the issue is not as well-settled as suggested.  Several circuits have yet to articulate their standard and continue to hold open the possibility of § 2255 relief in cases such as this.  <u>See, e.g.</u>, <u>Gilbert</u>, 2011 WL 1885674, at *29 ("We do not decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motion."); <u>United States v. O'Neal-Sloane</u>, 371 F. App'x 298, 301 (3d. Cir. 2010) ("Arguably, an incorrect classification as a career offender would be a miscarriage of justice but O'Neal-Sloane does not present such a case.").  Further, the Seventh Circuit recently granted  § 2255 relief based upon sentencing error that resulted in a sentence within the statutory range.  <u>See</u>  <u>Narvaez v. United States</u>, ___ F.3d ___, 2011 WL 2162901 (7th Cir. June 3, 2011).

exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Davis, 417 U.S. at 346. Later, in United States v. Timmreck, 441 U.S. 780 (1979), the Court rejected a claim that a mere technical violation of a Rule 11 notice requirement regarding terms of supervised release could justify § 2255 relief. There, the Court stated, "It is not a fundamental defect which inherently results in a complete miscarriage of justice, *nor an omission inconsistent with the rudimentary demands of fair procedure*." Id. at 783 (emphasis added) (quoting Hill, 368 U.S. at 428). Importantly, the Court in Timmreck proceeded to examine the facts of the case, found no harm, and explained how the particular omission at issue had not resulted in a proceeding "inconsistent with the rudimentary demands of fair procedure." Id. at 784 (internal quotation marks omitted). The Court specifically limited its holding, stating, "[W]e find it unnecessary to consider whether § 2255 relief would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances." Id. 784–85.

Keying off this language, it seems clear that, rather than borrowing a miscarriage-of-justice standard from absolutist and non-analogous settings such as the enforcement of appeal waivers or the application of the actual-innocence exception, supra at 7–8, the key inquiry today must be whether the present case satisfies "the rudimentary demands of fair procedure." The Supreme Court's own language and the fact that it actually reviewed the alleged error in Timmreck for harmlessness, id. at 784, support this conclusion. Rudimentary demands of fair procedure require § 2255 relief where the preserved error is not harmless and where it is ultimately shown that the defendant was correct all along as to a fully preserved issue made retroactive after a conviction becomes final. Had the Court's rule been absolute, as interpreted by the majority today, the Court would have had no reason to conduct a harmless error review in Timmreck or to note the absence of other aggravating circumstances.

Facing an issue nearly identical to that in the present case, the Seventh Circuit recently held a sentencing error cognizable in an initial § 2255 proceeding even though the sentence at issue fell within the applicable statutory range. See Narvaez

v. United States, ___ F.3d ___, 2011 WL 2162901, at *4–5 (7th Cir. June 3, 2011) (granting relief, but noting, "Unlike the situation under the [Armed Career Criminal Act], Mr. Narvaez's 170-month sentence was actually within the authorized 20-year statutory maximum for his crime"). There, the court rejected arguments similar to those advanced by today's majority, holding, "The fact that Mr. Narvaez's sentence falls below the applicable statutory-maximum sentence is not alone determinative of whether a miscarriage of justice has occurred." Id. at *5. The court called arguments about what sentence the district court might have imposed in the absence of the career-offender enhancement "[s]peculation" and held that the defendant had "an absolute right not to have extra punishment imposed on the basis of an inapplicable enhancement." Id. The court rejected attempts by the government to mischaracterize the defendant's asserted right as "an absolute right to a lower sentence" and appropriately identified the right at issue as "the right *not* to have *extra* punishment imposed" without legal justification. Id. (emphasis added). This characterization of the issue rejects the fiction, adopted by today's majority, that no process is denied as long as a sentence falls below the statutory maximum.

The court in Narvaez, and the dissenters in a recent, en banc Eleventh Circuit opinion correctly note that the present issue pits concerns of finality against justice with no attendant issues of comity or federalism as often arise in AEDPA cases. Gilbert, 2011 WL 1885674, at *38–39 (Martin, J., dissenting); id. at *41–42 (Hill, J., dissenting). In Gilbert, the en banc court strictly and expressly limited its holding to the unique situation presented in that case, namely, the ability to seek the type of relief discussed herein through a *successive* § 2255 motion where error was not fully preserved. Id. at *29 (holding a Begay sentencing error not cognizable in a subsequent § 2255 petition but stating, "We do not decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motion"). The numerous dissents and concurrences contained therein suggest a firm split in that court as to how it might resolve the actual issue we face today.

Discussing concerns of finality, a first dissenter described the reasons we value finality and convincingly demonstrated that none of those reasons were furthered by a denial of relief:

> First, denying relief does not build confidence in our court system because this looks to the world like a court refusing to acknowledge or make amends for its own mistake. Second, to the extent that there have been administrative costs and delay in considering Mr. Gilbert's request for relief, they have already been incurred, and we need only grant him that relief to end his very expensive incarceration. Third, because the only issue before us is a purely legal one, there is no evidence we must consult. Thus spoilation is not a concern. And finally, Mr. Gilbert's case presents no comity concerns insofar as he seeks to correct a sentence imposed in federal court and not by the state.

Id. at *39 (Martin, J., dissenting). Emphasizing the defendant's diligence, the next dissenter stated, "[The defendant] raised his claim of sentencing error to every court he could, every chance he got. No court correctly resolved his claim until the Supreme Court made clear that [his] claim was meritorious—he was never a career offender." Id. at *41 (Hill, J., dissenting).

Judge Hill eloquently concluded:

> I recognize that without finality there can be no justice. But it is equally true that, without justice, finality is nothing more than a bureaucratic achievement. Case closed. Move on to the next. Finality with justice is achieved only when the imprisoned has had a meaningful opportunity for a reliable judicial determination of his claim. Gilbert has never had this opportunity.

Id. at *42.

Like the court in <u>Narvaez</u> and the dissenters in <u>Gilbert</u>, I find the sole justification for the majority's holding today to be an uncompelling and unjust denial of process resting on hollow claims of a need to promote finality. I find the dissenter's views in <u>Gilbert</u> to be particularly persuasive because that court was facing a successive petition whereas Sun Bear's case is even more compelling: he now advances his fully preserved and diligently pursued arguments in this, his first attempt at collateral review pursuant to § 2255.

Finally, I note that the government presents a parade of horribles suggesting there will be an overwhelming burden caused by the application of § 2255 in this context due to the number of career offenders, the number of post-<u>Begay</u> crime of violence disqualifications, and the number of other Guidelines errors likely to be raised in § 2255 motions. This alarmist argument is wholly without merit given the limitation of the facts of the present case: fully preserved error in the context of new Supreme Court authority issued with retroactive effect as applied in a case that cannot pass a harmless error inquiry. Further, the government's argument suggests that keeping court dockets clear is more important than the liberty of those prisoners who potentially should not be serving career-offender sentences. Even if there were merit to the government's assertions, resentencings pursuant to recent guideline amendments have shown the courts' ability to efficiently process sentencing adjustments en mass.

———————————————————