# United States Court of Appeals
## For the First Circuit

No. 14-1296

ALEXANDER CUEVAS,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Barron, Circuit Judges.

Linda J. Thompson, with whom Thompson & Thompson, PC was on brief, for appellant.
Michael A. Rotker, Attorney, United States Department of Justice, Criminal Division, with whom Carmen Ortiz, United States Attorney, Timothy E. Moran, Assistant United States Attorney, Leslie R. Caldwell, Assistant Attorney General, and Sung-Hee Suh, Deputy Assistant Attorney General, were on brief, for appellee.

February 11, 2015

**LYNCH, Chief Judge**. This appeal requires us to decide a narrow question: Does a criminal defendant whose federal sentence was increased based on state convictions that have since been vacated for the reasons here and who seeks to obtain resentencing on the federal charge have a claim that is cognizable under 28 U.S.C. § 2255? We hold that the claim is cognizable. We reverse the district court's contrary determination and remand for prompt further proceedings consistent with this opinion.

I.

On August 12, 2011, Alexander Cuevas was convicted by a jury of one count of conspiracy to possess with intent to distribute less than 100 grams of heroin and four counts of distributing and possessing with intent to distribute heroin. The Presentence Report calculated Cuevas's base offense level at 24 and his criminal history category at IV, yielding a Guidelines imprisonment range of 77 to 96 months. The district court adopted the probation office's calculations -- which Cuevas agrees were correct -- and sentenced Cuevas to 84 months imprisonment and a six-year term of supervised release. Judgment was entered on December 6, 2011. Cuevas appealed his conviction (but not his sentence), and this court affirmed. United States v. Cuevas, No. 11-2473 (1st Cir. Apr. 5, 2013).

Before Cuevas's trial, the government had filed an Information to Establish a Prior Conviction which alleged that

Cuevas had two felony drug convictions in Massachusetts state court: an October 3, 2007, conviction for possession of a Class A substance in Lynn District Court (No. 0713-CR-1371) and a November 30, 2007, conviction for possession with intent to distribute a Class A substance in Lynn District Court (No. 0613-CR-7061). These convictions influenced Cuevas's sentence on the federal charges in two ways relevant here. First, the conviction in No. 0613-CR-7061 added two criminal history points to Cuevas's criminal history score, bringing it to 7, which translates to a criminal history category of IV. Second, the fact of the convictions triggered a mandatory minimum supervised release term of six years. See 21 U.S.C. § 841(b)(1)(C).

While the direct appeal in this case was pending, it came to light that Annie Dookhan, a chemist at the Massachusetts Department of Public Health's Hinton Drug Laboratory, had falsified certificates of drug analysis and contaminated negative samples so that they would test positive. It was difficult to ascertain which samples under her supervision resulted in falsified reports and which did not. Dookhan had participated in the drug analysis leading to both of Cuevas's state drug convictions, so Cuevas filed motions for a new trial in both cases. On December 5, 2012, the state court vacated the drug count in No. 0713-CR-1371. The court's order reads: "Ms. Dookhan was the confirmatory chemist; this fact was not known to the jury. The interests of justice

mandate a new trial under these circumstances."[1]  On April 11, 2013, the state court vacated the conviction in No. 0613-CR-7061, noting that Dookhan was the chemist and that the government did not object to Cuevas's motion for a new trial.  The state filed a nolle prosequi as to both of the vacated convictions.

These developments had two potential effects on Cuevas's Guidelines calculation.  First, the vacatur and dismissal of the conviction in No. 0613-CR-7061 eliminated two of his seven criminal history points.[2]  This would have reduced his criminal history category from IV to III and his Guidelines imprisonment range from 77-96 months to 63-78 months.  Second, the combined effect of the vacaturs and dismissals was to extinguish both convictions forming the basis for the government's Information to Establish a Prior Conviction, thereby reducing the mandatory minimum term of supervised release from six years to three years.  See 21 U.S.C. § 841(b)(1)(C).

Cuevas's current projected release date is December 10, 2015.  His release on that date is contingent on successful completion of a drug abuse program and transition to a halfway house.  Were he to be resentenced at the high end of his revised

---

[1]  Convictions on other counts in that case, including a charge for carrying a firearm without a license, remained intact.

[2]  The vacatur of the drug count in No. 0713-CR-1371 did not have any effect on Cuevas's criminal history score because the conviction on a firearm charge in that case remained intact.

-4-

Guidelines range (78 months), his projected release date would be June 15, 2015.

On June 3, 2013, Cuevas, acting pro se, filed a motion to vacate under 28 U.S.C. § 2255. He argued that, under Johnson v. United States, 544 U.S. 295 (2005), United States v. Pettiford, 101 F.3d 199 (1st Cir. 1996), and like cases, he was entitled to reopen his federal sentence in light of the vacatur of the underlying state convictions. The government concedes that Cuevas's § 2255 motion was timely filed, and that his claim is not procedurally defaulted.

The district court denied the motion to vacate in a March 13, 2014, memorandum and order. The court characterized Cuevas's claim as one alleging "an erroneous application of the advisory Sentencing Guidelines" and noted that "[m]ost circuit courts that have considered the issue have agreed . . . that section 2255 does not apply to errors in the application of the Sentencing Guidelines unless such errors result in a manifest miscarriage of justice." The district court agreed with this view and held that Cuevas's claim was not cognizable, stating that this was not "a case in which th[e] court discerns a manifest injustice counseling against closing the books on Cuevas's sentence."

The district court granted Cuevas a Certificate of Appealability on the issue of whether "nonconstitutional Guidelines

errors are susceptible to attack only in instances of manifest injustice."  The COA was later expanded to include the issue of

> whether, under <u>Mateo</u> v. <u>United States</u>, 398 F.3d 126 (1st Cir. 2005) and <u>Johnson</u> v. <u>United States</u>, 544 U.S. 295, 303 (2005), Cuevas's claim is cognizable under [28 U.S.C.] § 2255, including whether he claims the right to be released on the ground that the sentence "was imposed in violation of the Constitution" or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

## II.

28 U.S.C. § 2255(a) provides that a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on one of the following four grounds:

> [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack.

Cuevas's brief argues principally that the state convictions upon which the federal sentencing calculations were based were vacated because they were obtained unconstitutionally, and suggests that accordingly his claim is cognizable under the first prong of § 2255(a).  Cuevas's premise is incorrect.  The state court did not vacate the convictions on constitutional grounds.[3]  Rather, the court vacated the drug count in No.

---

[3]   We therefore need not address whether, if a state court conviction is ruled unconstitutional, a federal sentence enhancement on the basis of that conviction would be rendered

-6-

0713-CR-1371 because "[t]he interests of justice mandate[d] a new trial" in light of Dookhan's misconduct, and it vacated the conviction in No. 0613-CR-7061 because Dookhan was the chemist and the government did not object to Cuevas's motion for a new trial. Under Massachusetts law, "a judge may grant a motion for a new trial any time it appears that justice may not have been done." Commonwealth v. Scott, 5 N.E.3d 530, 539 (Mass. 2014) (citing Mass. R. Crim. P. 30(b)). Such motions are not limited to constitutional errors. Thus, the record does not reflect that the state convictions were vacated on constitutional grounds.

The government, like the district court, has characterized Cuevas's claim as one alleging a "misapplication[] of the federal Sentencing Guidelines." The government argues that such errors are not cognizable under any of the four prongs of § 2255. But this characterization of the claim is not accurate either. A "Guidelines-misapplication claim" would be a claim that the district court legally erred in its application of the Guidelines to undisputed underlying facts -- for example, by designating a defendant as a "career offender" based on a conviction for an offense that the court erroneously held was a crime of violence. Spencer v. United States, 773 F.3d 1132 (11th Cir. 2014) (en banc), provides a useful example. There, the petitioner had been convicted and sentenced as a career offender

_____

unconstitutional.

based on a prior conviction for felony child abuse.  Id. at 1135.  His conviction and sentence were affirmed on direct appeal.  Id. at 1136.  After the appeal was decided, the Supreme Court issued Begay v. United States, 553 U.S. 137 (2008), which clarified the standards for classifying individuals as career offenders.

The defendant then filed a § 2255 petition seeking to vacate his sentence.  He argued that Begay "ma[de] clear that the district court and [the Eleventh Circuit] erroneously classified him as a 'career offender' [because the] prior conviction for felony child abuse . . . [was] not a 'crime of violence.'" Spencer, 773 F.3d at 1135.

In a 5-4 en banc decision, the Eleventh Circuit held that Spencer could not "collaterally attack his sentence based on a misapplication of the advisory guidelines."  Id.  The court noted that "Spencer's sentence f[ell] below the statutory maximum, and his prior conviction for felony child abuse ha[d] not been vacated," id., specifically distinguishing Spencer's claim of legal error in application of the Guidelines from a claim like Cuevas's, where the underlying conviction was vacated, see id. at 1143 ("Spencer's prior conviction has not been vacated, and that distinction matters.").[4]

---

[4]    The cases that the government cites for its argument that "misapplications of the federal Sentencing Guidelines" are not cognizable in § 2255 proceedings are all of this ilk.  See, e.g., Hawkins v. United States, 706 F.3d 820, 822 (7th Cir. 2013) (petitioner claimed that district court had sentenced him as a

Here, Cuevas acknowledges that the district court's calculations were legally correct at the time of sentencing. His claim of error is of a different stripe: he argues that he is entitled to resentencing because the convictions upon which those calculations were based are no longer valid. This error is not jurisdictional. The narrow question before us is whether Cuevas's claim is cognizable under the "otherwise subject to collateral attack" prong of § 2255(a).[5]

We hold that it is, under Supreme Court and First Circuit precedent. The fourth prong of § 2255(a) encompasses "assignments of error that reveal 'fundamental defect[s]' which, if uncorrected,

career offender based on an erroneous determination that a prior conviction was a crime of violence), op. supplemented on den. of reh'g, 724 F.3d 915 (7th Cir. 2013); Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (en banc) (same); United States v. Pregent, 190 F.3d 279, 281, 283-84 (4th Cir. 1999) (petitioner claimed that the district court had erred in his Guidelines calculation by assigning criminal history points to convictions that "encompassed activity that was already included as part of the relevant offense conduct"); Auman v. United States, 67 F.3d 157, 159-61 (8th Cir. 1995) (petitioner claimed that district court had sentenced him as a career offender based on an erroneous determination that a prior conviction was a crime of violence); Knight v. United States, 37 F.3d 769, 771-74 (1st Cir. 1994) (petitioner claimed that the district court had erroneously added points to his criminal history score for convictions that were part of the offense of conviction and that the court had erroneously imposed a fine beyond the petitioner's ability to pay); Scott v. United States, 997 F.2d 340, 340-42 (7th Cir. 1993) (petitioner claimed that district court had erroneously increased his criminal history category under U.S. Sentencing Guidelines Manual § 5K2.6).

[5] We note that this is not a case in which the state court judge vacated the state convictions with the primary purpose of affecting the federal sentence, and this opinion does not address that issue. There is no suggestion that occurred here.

will 'result[] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (alterations in original) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). "In other words, . . . a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident." Id. Applying this test, we find that the facts in Cuevas's case -- namely, the vacatur of his state convictions in light of Annie Dookhan's involvement in those cases -- are sufficiently exceptional such that his claim is cognizable under § 2255. Our holding is narrow. We need not and do not address the cognizability of a claim, like the one at issue in Spencer, that the sentencing court legally erred in applying the Guidelines.

In Johnson v. United States, 544 U.S. 295 (2005), the Supreme Court addressed the issue of "when the 1-year statute of limitations in [§ 2255] begins to run in a case of a prisoner's collateral attack on his federal sentence on the ground that a state conviction used to enhance that sentence has since been vacated." Id. at 298. The petitioner, Johnson, had been sentenced in federal court in 1994 as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1 on the basis of two 1989 drug convictions in Georgia. Id. In 1998, one of those convictions was vacated, and Johnson then filed a § 2255 motion in federal district court

-10-

seeking to vacate the enhanced federal sentence on the basis of the vacatur of the state conviction.  Id. at 300-01.  The district court denied the motion as untimely under the Antiterrorism and Effective Death Penalty Act's 1-year statute of limitations, and the Eleventh Circuit affirmed.  Id. at 301-02.

The Supreme Court held that the vacatur of the state conviction was a "fact" triggering a new 1-year limitations period under 28 U.S.C. § 2255(f)(4), but that a petitioner may only take advantage of that provision if he has "sought [the vacatur of the predicate conviction] with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." Id. at 298.  Because Johnson had unreasonably delayed in attacking his state court conviction, the Court affirmed the dismissal of his § 2255 motion.  Id. at 311.

In the course of its opinion, the Court noted the parties' agreement that, "if [Johnson] filed his § 2255 motion in time, he [would be] entitled to federal resentencing now that the State has vacated one of the judgments supporting his enhanced sentence."  Id. at 302-03.  The Court explained that this proposition had been a "premise" of its prior cases.  Id. at 303 (citing Custis v. United States, 511 U.S. 485 (1994); Daniels v. United States, 532 U.S. 374 (2001)).

Johnson strongly suggests that a defendant like Cuevas – whose predicate state convictions were vacated in the interests of

-11-

justice because of Dookhan's misconduct -- may reopen his sentence in a § 2255 proceeding. In <u>Johnson</u>, the defendant's state court conviction had been vacated because he had not affirmatively waived his right to counsel in the state court proceeding. <u>Id.</u> at 301. Similarly, the circumstances here support Cuevas's § 2255 claim. To be sure, the relevant language from <u>Johnson</u> was dicta, but "federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement." <u>McCoy</u> v. <u>Mass. Inst. of Tech.</u>, 950 F.2d 13, 19 (1st Cir. 1991); <u>see also</u> <u>Igartúa</u> v. <u>United States</u>, 626 F.3d 592, 605 n.15 (1st Cir. 2010) ("Carefully considered Supreme Court dicta, though not binding, 'must be accorded great weight and should be treated as authoritative.' Although the Supreme Court may ignore its own dicta, we are a lower court bound by the Supreme Court." (citations omitted)).

We are particularly inclined to treat the <u>Johnson</u> dicta as authoritative since, were it not accurate, the <u>Johnson</u> opinion would have been a largely theoretical exercise. The statute of limitations issue would have been irrelevant if Johnson's claim were not cognizable in a § 2255 proceeding in the first place. <u>See</u> <u>Spencer</u>, 773 F.3d at 1168 & n.2 (Rosenbaum, J., dissenting). And this court has in fact approvingly cited <u>Johnson</u> for the precise

proposition in question.  See Rossetti v. United States, 773 F.3d 322, 331 (1st Cir. 2014).

Our decision in Pettiford lends further support to our conclusion.  There, we confronted a § 2255 petition brought by a defendant who had been sentenced in 1991 to a mandatory fifteen-year sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), based on nine prior state convictions for violent felonies.  Pettiford, 101 F.3d at 200.  In 1994, eight of the nine state convictions were vacated, and shortly thereafter a federal district court granted relief under § 2255 and reduced the defendant's sentence.  Id.  This court rejected the government's contention that the claim was not cognizable under § 2255.  Id. at 201.  We relied in part on the Supreme Court's decision in Custis v. United States, 511 U.S. 485 (1994), in which the Supreme Court stated in dicta that a petitioner who "is successful in attacking . . . state sentences . . . may then apply for reopening of any federal sentence enhanced by the state sentences."  Pettiford, 101 F.3d at 200 (quoting Custis, 511 U.S. at 497).  We note that Johnson also relied on Custis.  See Johnson, 544 U.S. at 303.

The government argues that Pettiford is distinguishable because it involved the ACCA rather than the Sentencing Guidelines.  This distinction matters, says the government, because misapplications of the ACCA "necessarily produce[] a sentence 'in excess of the maximum authorized by law,' within the meaning of the

[third] clause of Section 2255(a)." But Pettiford's rationale was not so limited. Pettiford did not rely on the third clause of the statute. See 101 F.3d at 201 ("[W]hether on constitutional or grounds otherwise subject to collateral attack, we concur with the district court's recognition of federal habeas jurisdiction." (emphasis added)). We read Pettiford (and Custis) as also applicable to cases involving vacaturs of state convictions which affect federal Guidelines sentences. Many courts have agreed, finding that there is no principled difference between enhancements under the ACCA and increases under the Sentencing Guidelines. See United States v. Caldwell, No. 97-5252, 210 F.3d 373, at *9 (6th Cir. Mar. 23, 2000) (unpublished table opinion) (collecting cases); see also, e.g., Mateo v. United States, 398 F.3d 126, 134 (1st Cir. 2005) (noting that the "underlying principle" of Pettiford applies to Guidelines errors as well as to the ACCA); United States v. Doe, 239 F.3d 473, 475 (2d Cir. 2001); United States v. LaValle, 175 F.3d 1106, 1108 (9th Cir. 1999). Johnson itself supports this proposition. See 544 U.S. at 303 (equating enhancements under the ACCA with enhancements under the Sentencing Guidelines).

The government's attempts to distinguish Mateo, which also supports our holding, are similarly unavailing. In that case, the defendant's federal sentence was enhanced because of a state drug conviction that was later vacated on constitutional grounds. Mateo, 398 F.3d at 127-28, 134. Relying on Pettiford, we held that

-14-

§ 2255 relief was appropriate, and we rejected the government's contention that the claim was not cognizable on collateral review. Id. at 133-36. Here, the government argues that Mateo is distinguishable because Cuevas's state convictions, unlike Mateo's, were not vacated on constitutional grounds, but we are not persuaded. Mateo did not rely solely on the first prong of § 2255(a) in order to hold the claim cognizable. Instead, Mateo noted that non-constitutional claims are cognizable if they meet the "miscarriage of justice" standard of the fourth prong -- that is, the fourth prong is not limited to constitutional errors. Id. at 136. And Mateo's holding appeared to rest at least in part on the fourth prong. See id. ("[T]he state order vacating Mateo's guilty plea and ordering a new trial rested upon the violation of Mateo's right to have entered a voluntary and knowing plea. We have described such a violation as one of constitutional dimension and, in any event, as a claim cognizable under § 2255 on the basis of which a district court may properly reopen a federal sentence."). Here, Cuevas's state convictions were vacated in the "interests of justice" on the basis of a determination that the conviction could no longer stand given what the Supreme Judicial Court of Massachusetts later determined was "egregious" governmental misconduct in the lab that certified the test results on which Cuevas's state convictions rested. Scott, 5 N.E.3d at 535. There is no reason that a fourth-prong challenge to a

sentence in these circumstances should fare less well than the claim we found cognizable in Mateo.

The majority of our sister circuits have held or expressly assumed that a defendant whose sentence is increased based on convictions that are subsequently vacated can reopen his or her sentence via a § 2255 proceeding. See Purvis v. United States, 662 F.3d 939, 942 (7th Cir. 2011); Stewart v. United States, 646 F.3d 856, 864 (11th Cir. 2011); United States v. Pettiford, 612 F.3d 270, 276 (4th Cir. 2010); Doe, 239 F.3d at 475; LaValle, 175 F.3d at 1108; United States v. Cox, 83 F.3d 336, 339 (10th Cir. 1996); United States v. Nichols, 30 F.3d 35, 36 (5th Cir. 1994); see also 3 Wright & Miller, Federal Practice and Procedure § 626 (4th ed. 2014) ("[A] defendant who has successfully attacked a state conviction may use § 2255 to seek review of any federal sentence that was enhanced because of the prior state conviction."). We are aware of no Court of Appeals case taking a contrary position. Accordingly, we join our sister circuits and hold that claims such as Cuevas's are cognizable under the fourth prong of § 2255(a).

The government makes several arguments in favor of its contention that Cuevas's claim is not cognizable, but we do not find them persuasive.

First, the government argues that "Cuevas' assertion that his claim is cognizable under Mateo does not constitute the kind of

-16-

'effort at developed argumentation' that is required to avoid a finding of waiver." Whatever the clarity of Cuevas's appellate brief, it quoted the language from Johnson that supports his position and cited Pettiford and Mateo for the proposition that "[w]here a state conviction used to enhance a federal sentence is subsequently vacated, a § 2255 motion is the appropriate vehicle for correcting a sentence when the enhancement is no longer applicable." This is sufficient to avoid a finding of waiver.[6] See United States v. Dunbar, 553 F.3d 48, 63 n.4 (1st Cir. 2009) (declining to find waiver where defendant's brief did "not state his claim artfully" but identified relevant facts and cited pertinent case law). We also note that Cuevas squarely raised the Johnson claim in his pro se filing before the district court.

Second, the government argues that Cuevas cannot seek relief in a § 2255 proceeding because, upon resentencing, the district court would "ha[ve] the legal authority, objectively speaking, to reimpose the same sentence after considering the

---

[6] The government criticizes Cuevas for not citing Damon v. United States, 732 F.3d 1 (1st Cir. 2013), Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002), Knight v. United States, 37 F.3d 769 (1st Cir. 1994), or other cases "support[ing] the non-cognizability of freestanding guidelines claims." The government is off the mark. As explained above, Cuevas's claim is not a "freestanding guidelines claim." Ironically, neither Damon nor Cofske nor Knight even resolved the issue of whether a claim of mere error in application of the Guidelines is cognizable. Knight and Damon explicitly left it open, see Damon, 732 F.3d at 3-4; Knight, 37 F.3d at 773-74, and Cofske dealt with a constitutional claim of ineffective assistance of counsel, not a freestanding Guidelines claim, see 290 F.3d at 441.

-17-

properly-calculated advisory range." We reject this argument. "Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of his initial sentencing, [Cuevas] was sentenced based upon the equivalent of a nonexistent offense." Narvaez v. United States, 674 F.3d 621, 629 (7th Cir. 2011). We will not deny relief on the basis of the "frail conjecture" that the district court would have sentenced Cuevas to 84 months in prison and six years supervised release even absent these two state convictions. See id. (quoting Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)).

Third, the government contends that Johnson is distinguishable because Johnson was sentenced before United States v. Booker, 543 U.S. 220 (2005), when the Guidelines were mandatory. We disagree. The Guidelines, even though now only advisory, remain the "lodestone of sentencing." Peugh v. United States, 133 S. Ct. 2072, 2084 (2013). "Even after Booker . . . , district courts have in the vast majority of cases imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." Id. Thus, the cognizability of Cuevas's claim should not turn on whether the Guidelines were mandatory or advisory at the time of his sentencing. Peugh, which held that, under the Ex Post Facto Clause, a defendant may not be sentenced under Guidelines promulgated after he committed the offense if the new version provides a higher sentencing range, id. at 2078, favors

-18-

our conclusion. Peugh rejected the argument that the advisory nature of the Guidelines obviated any constitutional problem, reasoning that the Guidelines still tend to "steer district courts to more within-Guidelines sentences." Id. at 2084.[7]

Finally, the government makes several policy arguments in support of its broad contention that "Guidelines errors are not cognizable." It contends, for example, that a contrary holding "would threaten to destabilize the finality of countless other final judgments and sentences affected by a change in the relevant factual or legal landscape." These arguments misconstrue the question that we are tasked with deciding. We do not hold that defendants may reopen their sentences based on purported legal error in application of the Guidelines; we hold merely that defendants whose predicate state convictions have been vacated may reopen a federal sentence that was influenced by those convictions, so long as the vacatur of the underlying state convictions demonstrates exceptional circumstances as required by the fourth prong of § 2255(a). "[T]hat distinction matters." Spencer, 773 F.3d at 1143. This has been the law in many circuits for years,

---

[7] The government's proposed distinction of Johnson has not been adopted by any Court of Appeals. Indeed, several courts have held or suggested that the Johnson dicta should apply to defendants sentenced under the advisory Guidelines. See, e.g., Rossetti, 773 F.3d at 326, 331; Spencer, 773 F.3d at 1143 (citing Stewart, 646 F.3d at 858); Purvis, 662 F.3d at 941-42.

and the government's "finality-busting concerns" have not materialized.

Moreover, <u>Johnson</u> holds that a petitioner may reopen a federal sentence based on the vacatur of a predicate state conviction only if he "sought [the vacatur] with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." 544 U.S. at 298. This limitation significantly ameliorates any finality concerns that the <u>Johnson</u> rule might otherwise raise.

To be clear, on remand, the district court must hear Cuevas's arguments and decide an appropriate sentence. But we do not suggest in any way what that sentence should be. <u>See</u> <u>Custis</u>, 511 U.S. at 497; <u>LaValle</u>, 175 F.3d at 1108.

### III.

We hold that Cuevas's claim is cognizable under § 2255, and reverse and remand for further proceedings consistent with this opinion. We express no view on an appropriate sentence for Cuevas once his sentence is reopened. If the district court decides to reduce Cuevas's sentence, the court should act promptly to ensure that Cuevas receives the benefit of the reduction.

<u>Reversed</u>.