**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name:  17a0114n.06

Case No. 16-1004

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 17, 2017<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| SENECCA FREEMAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

**BEFORE:  GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.**  Senecca Freeman dealt heroin mixed with fentanyl—a synthetic opioid 50 to 100 times more powerful than morphine.[1]  After a customer's girlfriend fatally overdosed on this concoction, police discovered Freeman's operation.  A five-count indictment on gun and drug charges followed.  The Government then offered Freeman a deal. He could plead guilty to a single firearms charge while conceding that his earlier convictions qualified him for a minimum 15-year sentence under the Armed Career Criminal Act—rather than the firearm offense's usual 10-year maximum.  In exchange, the Government would drop the remaining charges.  If Freeman rejected the deal, the Government would try to supersede the

---

[1] NIDA (2016). Fentanyl. Retrieved January 9, 2017, from https://www.drugabuse.gov/drugs-abuse/fentanyl.

indictment with a charge of distribution resulting in death—an offense carrying a minimum sentence of life.

Freeman took the deal. Per the agreement, the parties could litigate at sentencing the propriety of any departure from the guidelines range. The Government moved for a departure citing a provision, U.S.S.G. § 5K2.1, that allows for an increased sentence when a death results. The district court, finding Freeman at least knew his product to be highly potent and dangerous, granted this departure to account for the overdose victim's death. Ultimately, Freeman was sentenced to over 22 years in prison.

On appeal, Freeman challenges his sentence on two grounds. First, he asserts that his attorney misadvised him that Michigan's unarmed-robbery statute constituted a "violent felony" under the ACCA and thereby qualified him for that statute's 15-year minimum sentence. Thus, he maintains that his Sixth Amendment right to effective assistance of counsel was violated. Second, although he concedes that the Government could seek an upward departure, he believes the district court erred in granting one. For the following reasons, the first challenge was premature and the second challenge was waived.

I

Both parties ask us to address Freeman's ineffective assistance of counsel claim—or IAC claim as it is commonly called—on the merits, but we decline their invitation. As a general rule, we refuse to hear such claims on direct appeal. *See, e.g.*, *United States v. Bradley*, 400 F.3d 459, 461–62 (6th Cir. 2005). This policy results from the mismatch between the information needed to adjudicate an IAC claim and the record typically generated at the district court. *See id.* To prevail on an IAC claim, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) that the defendant suffered "prejudice" from the

deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Trial court proceedings, however, focus on different questions—like the defendant's guilt, innocence, or degree of culpability. Often, the record reveals little about counsel's strategic thinking or advice to the client. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Thus, we may "have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Id.* at 505.

This case presents no exception. Freeman faults how trial counsel resolved an open question: whether Michigan's unarmed-robbery statute counted as a "violent felony" under the ACCA. Even if we accepted a necessary premise in Freeman's IAC claim—that counsel erred in resolving this question—that counsel performed deficiently does not inevitably follow. If the answer to the underlying legal question were clear, counsel's simply getting it wrong would, of course, be deficient performance. *Cf. Padilla v. Kentucky*, 559 U.S. 356, 368 (2010) (holding that counsel performed deficiently by failing to advise defendant on the consequences from his guilty plea where the applicable statute was "succinct, clear, and explicit"). But when the law lacks clarity, counsel's duty becomes harder to define. *See id.* at 369.

And counsel lacked a clear answer in this case. He advised Freeman just weeks after the Supreme Court limited what offenses could qualify as "violent felonies" under the ACCA, and thus could contribute to making Freeman eligible for its minimum sentence. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Perhaps, as Freeman asserts, Michigan's statute no longer counts toward making him eligible for an enhancement. But counsel's failure to predict how the law will develop does not necessarily make him ineffective. *See Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) (collecting cases); *States v. Davies*, 394 F.3d 182, 190–91 (3d Cir. 2005) (holding that counsel did not perform deficiently by failing

to challenge a conviction using a Commerce Clause argument that succeeded in a later case); *cf. Lafler v. Cooper*, 566 U.S. 156, 174 (2012) ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). After all, at least one court has agreed with counsel's take on Michigan's statute. *See United States v. Lamb*, 638 F. App'x 575, 576 (8th Cir. 2016), *cert. granted, judgment vacated*, 2016 WL 4399374 (2016). Without knowing how counsel prepared, or how he advised Freeman on the possible risks related to litigating this issue, we decline to determine whether counsel performed deficiently or whether the offense is a violent felony.

II

Freeman presents his second challenge—that the district court impermissibly granted an upward departure—in a manner that bleeds together conceptually distinct arguments. They may be split into a few contentions, however. First, he claims that the district court improperly considered "relevant conduct," as defined by U.S.S.G. § 1B1.3, when departing upward to account for the overdose death under § 5K2.1. Second, he says that the court neglected to make a mens rea finding required by that departure provision. Finally, he argues a point that he concedes this court's precedent forecloses: that the district court violated his Fifth and Sixth Amendment rights by establishing his dismissed and uncharged conduct under a preponderance-of-the-evidence standard.

We find these arguments unconvincing, but we do not address the merits here because Freeman waived these challenges. In his plea agreement, Freeman waived "all rights to appeal or collaterally attack his conviction, sentence, or any other matter related to this prosecution." R. 22, Plea Agreement, PID 47. Further, he agreed that the district court could consider "uncharged, relevant conduct" and "dismissed counts" in determining the "propriety of any

departure from the sentencing guidelines." *Id.* at PID 44–45. His arguments—based primarily on the district court's consideration of uncharged conduct—are unambiguously covered by the waiver. We enforce appellate waivers according to their terms. *United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012).

Given this broad language, these challenges are presumptively covered by the waiver unless Freeman can channel them into one of the waiver's enumerated exceptions. So Freeman argues that the challenges fit into an exception for claims that his "sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender." R. 22, PID 47. His argument that his burden-of-proof challenge falls within this unconstitutional-factor exception proceeds in two steps. First, he notes that the court considered his uncharged conduct as a "factor." And, he believes, the court unconstitutionally established the conduct by a mere preponderance of the evidence. Thus, he concludes, the court considered an "unconstitutional factor." As to his other departure-related challenges, he merely asserts that, especially where a departure provision requires some specified intent, a court's departure decision implicates "constitutional considerations."

Perhaps sensing some weakness in these interpretive moves, Freeman suggests that—even if we find his reading of the provision wanting—the unconstitutional-factor exception is at least ambiguous. In particular, he notes that the exception uses the phrase "such as," which means the list that follows—"race, religion, national origin, or gender"—must be non-exhaustive. If the list is non-exhaustive, he says, ambiguity necessarily exists as to what it might include. Because we apply a contra-proferentem-like rule that ambiguities must be resolved against the Government, s*ee, e.g.*, *United States v. Bowman*, 634 F.3d 357, 360–61 (6th Cir.2011), Freeman asserts that we must read the exception to cover his claims.

But a quasi-tiebreaker like contra proferentem only comes into play when the court confronts two *reasonable* interpretations of a provision. *See* Restatement (Second) of Contracts § 206 (1981). Freeman's contention that the unconstitutional-factor exception reaches his arguments is simply untenable. The "such as" language that Freeman cites, rather than introducing any ambiguity favorable to him, actually clarifies what "unconstitutional factor" means: one's membership in a protected class. The list forecloses the argument that his uncharged conduct is an "unconstitutional factor" contemplated by the provision.

Moreover, Freeman's challenge is not even to the court's consideration of his conduct as a "factor" per se. Rather, he challenges *how* the court evaluated that factor—that is, the standard used to establish his conduct and how the court applied a departure provision to it. This court has rejected similar attempts to reframe arguments related to the sentencing process as unconstitutional-factor arguments. *See United States v. Mizori*, 604 F. App'x 413, 417 (6th Cir. 2015); *United States v. Lash*, 584 F. App'x 285, 286 (6th Cir. 2014). The same result applies in this case.

For the foregoing reasons, we affirm.