RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0249p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JEREMY SNIDER,

     *Petitioner-Appellant,*

  *v.*

UNITED STATES OF AMERICA,

     *Respondent-Appellee.*

No. 16-6607

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
Nos. 1:06-cr-10005-1; 1:11-cv-01174—James D. Todd, District Judge.

Decided and Filed:  November 9, 2018

Before:  SUHRHEINRICH, MOORE, and BUSH, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:**  Dennis G. Terez, Beachwood, Ohio, for Appellant.  Jerry Kitchen, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

  SUHRHEINRICH, J., delivered the opinion of the court in which BUSH, J., joined. MOORE, J. (pp. 13–23), delivered a separate dissenting opinion.

_____

### OPINION

_____

  SUHRHEINRICH, Circuit Judge.  Petitioner Jeremy Snider ("Snider") appeals the district court's denial of his petition for collateral relief under 28 U.S.C. § 2255.  Snider contends that this court's en banc ruling in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc), *cert. granted*, 138 S. Ct. 1592 (Apr. 23, 2018)—holding that a conviction for Tennessee

aggravated burglary under TENN. CODE ANN § 39-14-403, is not a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)—requires us to vacate his sentence as a career offender under advisory sentencing guidelines range, U.S.S.G. § 4B1.1(a), because it is also not a "crime of violence." For the following reasons, we affirm the denial of Snider's motion to vacate his sentence.

## I.

### A.

Between 1992 and 2006, Snider committed assorted crimes, including four convictions under Tennessee's aggravated burglary statute, TENN. CODE ANN. § 39-14-403. As the district court put it at sentencing, "[y]ou basically, Mr. Snider, have been a one-man crime wave." On November 2, 2006, he was charged with conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846; manufacturing and attempting to manufacture over 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possessing equipment, chemicals, products, and materials that may be used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6); possessing a firearm after being convicted of a felony, in violation of 18 U.S.C.§ 922(g); possessing a stolen firearm, in violation of 18 U.S.C. § 922(j); and possessing a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). On July 6, 2007, a jury convicted him on all counts.

Snider's presentence report recommended an adjusted offense level of 34 under the U.S. Sentencing Guidelines Manual § 4B1.1(b)(B), because Snider qualified as a career criminal offender based on three Tennessee aggravated burglary convictions deemed crimes of violence. The guidelines define a career offender as having at least two prior felony convictions for crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a). At the time of Snider's sentencing, "crime of violence" was defined to include "burglary of a dwelling." U.S.S.G. § 4B1.2(a) (Nov. 1, 2007).[1]

---

[1]The full definition included any felony that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a) (Nov.1, 2007). The Sentencing Commission has since removed "burglary of a dwelling" from

The presentence report relied (erroneously it turns out) on three burglaries committed in 1995. In March 1995, Snider broke into three different residences on three different dates, March 19, 20, and 21. He was arrested for all three burglaries on the same day, April 19, 1995, and pleaded guilty to all three crimes on the same day, May 22, 1995. *Id.* Although the presentence report did not rely upon it in its calculation of the career offender designation, it also listed an additional qualifying Tennessee aggravated burglary conviction.

With the career offender designation, Snider's guidelines range was 360 months to life. (citing U.S.S.G. § 4B1.1(c)(3)). The presentence report noted that Snider's adjusted offense level after application of the various sentencing enhancements would have been the same in any event. However, without the career offender designation, based on Snider's criminal history score of 17, which established a criminal history category of VI, Snider's resulting advisory guidelines range was 262 to 327 months, plus 60 months consecutive.

Snider did not object to the classification of his prior convictions as crimes of violence in his sentencing memorandum or at the sentencing hearing. Snider asked for a sentence above the statutorily-mandated ten-year minimum, but "substantially less" than the 360 months suggested by the guidelines.

In considering the 18 U.S.C. § 3553 sentencing factors, the district court described the instant crime as "very serious" and "involving the manufacture of a poison, along with firearms, fleeing from police, putting police officers at risk during the flight." The court noted that Snider's life of crime began at age 15 (he was 30 at the time of sentencing), that he had twenty-four convictions listed in his presentence report, and that these included "serious burglary and theft convictions" as well as "drug convictions." The district court rejected Snider's request for a below-guidelines sentence, but sentenced him to the low end of the advisory guidelines range, with a total sentence of 300 months on the first five counts and the required 60-month consecutive sentence on count six.

---

the list of enumerated crimes of violence in § 4B1.2(a)(2). *See* U.S.S.G. Supp. to App. C., Amdt. 798 (eff. date Aug. 1, 2016).

On direct appeal, Snider raised one issue—he successfully argued that count six of the indictment mixed elements of two distinct offenses created by 18 U.S.C. § 924(c)(1)(A), and the jury instructions did not cure this flaw. *See United States v. Snider*, 379 F. App'x 430 (6th Cir. 2010). On remand, the district court dismissed the § 924(c) charge, and reimposed the original sentence on counts one through five, for a total sentence of 300 months.

**B.**

On June 16, 2011, Snider filed a timely *pro se* motion under 28 U.S.C. § 2255, raising four issues. On February 2, 2012, the district court directed the government to reply to Snider's first claim—that he received ineffective assistance of counsel at sentencing because counsel failed to object to his designation as a career criminal "on the ground that his three convictions for aggravated robbery were not committed 'on occasions different from one another'"—and denied relief on the three remaining claims.[2] In response, the government argued that even if Snider's three prior aggravated burglary convictions should only collectively count as one crime of violence, Snider still qualified as a career offender because he had an additional qualifying conviction listed in the presentence report; that the ineffective assistance of counsel issue was not fairly raised in Snider's motion; and that there was no evidence of ineffective assistance of counsel because Snider did not suffer any prejudice as a result of his attorney's failure to object to sentencing based on U.S.S.G. § 4A1.1(a)(2).

On September 23, 2013, Snider filed a *pro se* motion to supplement his § 2255 motion based on *Alleyne v. United States*, 570 U.S. 99, 108 (2013) (holding that any fact that increases the mandatory minimum sentence for a crime is an "element" rather than a sentencing factor and must be submitted to a jury) and *Descamps v. United States*, 570 U.S. 254, 260 (2013) (holding that the modified categorical approach cannot be used to determine the nature of a prior conviction under the ACCA when the crime of conviction has indivisible elements). On November 14, 2013, the district court granted the motion to supplement and denied relief on the

---

[2]The district court noted that, although the presentence report used the 2006 version of the Sentencing Guidelines, U.S.S.G. § 4A1.1 was amended by Amendment 709 to clarify that "[i]f there is no intervening arrest, prior sentences are counted separately unless . . . the sentences were imposed on the same day." U.S.S.G. App C Amend. 709 took effect on November 1, 2007, prior to Snider's April 18, 2008 sentencing.

first and supplemental claims. The court agreed with the government that although the three aggravated burglaries should have been counted as only a single predicate, Snider was properly classified as a career offender based on the additional aggravated burglary conviction listed in the presentence report but not specifically designated as a predicate offense. The court failed to see the relevance of *Alleyne* and *Descamps* and concluded that Snider was not entitled to relief on the supplemental issue presented. Moreover, it stated that "this Court is bound by the Sixth Circuit's holding in *Nance* that 'Tennessee aggravated burglary represents a generic burglary[.]" Thus, the district court determined that none of the issues raised in Snider's § 2255 motion had merit and further declined to issue a certificate of appealability.

On December 16, 2013, Snider filed a *pro se* motion for reconsideration under Fed. R. Civ. P. 59(e), arguing in part that the district court erred in denying relief under *Descamps*.[3] On September 9, 2016, the district court denied the motion:

> Snider . . . reiterates his argument, based on the decision in *Descamps*, that he was not properly sentenced as a career offender. He contends that the offense of aggravated burglary under Tennessee law is not categorically a crime of violence under the Career Offender guideline, U.S.S.G. § 4B1.1(a) because it is not a "generic" burglary. That argument is without merit. As the Court noted in the order denying the § 2255 motion, the Sixth Circuit held, in *United States v. Nance*, 481 F.3d 882, 887-88 (6th Cir. 2007), that "Tennessee aggravated burglary represents a generic burglary capable of constituting a violent felony for ACCA purposes." . . . Even after the decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) [holding that an increased sentence under the residual clause of the ACCA violated the constitutional due process], the Sixth Circuit reaffirmed the holding in *Nance*. *See United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015).

On May 16, 2017, this court granted a certificate of appealability, stating that "reasonable jurists would find it debatable whether the district court erred in denying Snider's claims that he was incorrectly classified as a career offender and that he received ineffective assistance of counsel." We also appointed counsel.

---

[3]Snider also filed *pro se* several motions to supplement the motion for reconsideration. In the final one, filed on July 11, 2016, Snider argued for reconsideration in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), as well as "in light of new developments regarding the Sixth Circuit Court of Appeals granting en banc for *United States v. Stitt* . . . to determine Tennesse(s) [sic] aggravated burglary statute which is overbroad." He also requested that counsel be appointed.

**II.**

Legal conclusions in a habeas corpus petition are reviewed de novo. *Cradler v. United States*, 891 F.3d 659, 664 (6th Cir. 2018).

Snider argues that we should vacate the district court's order denying his § 2255 motion because the district court relied on law that has since been overruled in our en banc decision in *Stitt*. Relatedly, he argues that because of ineffective assistance of counsel, he was incorrectly assessed as a career offender under the Sentencing Guidelines. The government has several responses: First, that Snider's reliance on *Stitt* is misplaced because *Stitt* dealt with the definition of generic burglary in the ACCA, and Snider's sentence is based on the advisory sentencing guidelines. So, Snider has forfeited his argument on appeal. Second, that Snider cannot challenge an advisory guidelines calculation on collateral review. Third, that Snider procedurally defaulted his claim by failing to raise it during sentencing, and he cannot show cause and prejudice to excuse his default. Fourth, that Snider received effective assistance from his sentencing counsel and suffered no prejudice.

**A.**

In *Stitt*, the en banc court held that because Tennessee's aggravated burglary statute is both broader than the generic form of burglary and indivisible, such a conviction does not categorically qualify as "violent felony" under the ACCA, 18 U.S.C. § 924(e). *Stitt*, 860 F.3d at 857. In the process, *Stitt* overruled *United States v. Nance*, 481 F.3d 882 (6th Cir. 2007), which held that Tennessee's aggravated-burglary statute matched the ACCA's definition of generic burglary, and abrogated *United States v. Priddy*, 808 F.3d 676 (6th Cir. 2015) (applying *Nance*). *Stitt*, 860 F.3d at 861.

Snider claims that we must vacate the district court's order because the lower court relied on *Nance* when it denied his § 2255 motion and *Stitt* has overruled *Nance*. The government responds that because Snider's sentence was based on U.S.S.G. § 4B1.1, not the ACCA, *Stitt* is not *directly* on point, and Snider's guidelines calculation challenge is somehow forfeited. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) (failing to raise an argument on appeal constitutes a forfeiture of the argument on appeal); *see also United States v.*

*Blair-Torbett*, 230 F. App'x 483, 490 (6th Cir. 2007) (stating that an objection made on appeal that differs from the one made at sentencing is reviewed for plain error).

We agree with the government's assertion that Snider would have come somewhat closer to the mark had he cited *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015), both of which were decided by the time of this appeal. *Ozier* held that the Tennessee aggravated burglary statute is broader than "burglary of a dwelling," under U.S.S.G. § 4B1.2(a)(2), *Ozier*, 796 F.3d at 600-02, and *Mathis* clarified that the statute is not divisible, *Mathis*, 136 S. Ct. at 2251 n.1 (abrogating *Ozier's* conclusion to the contrary). Thus, after *Mathis*, the Tennessee aggravated burglary statute is indivisible and, per *Ozier*, broader than the guidelines definition of "burglary of a dwelling."

To be fair, it must be acknowledged that this court has repeatedly equated the definition of "violent felony" under the ACCA "to the parallel determination of whether a prior conviction constitutes a 'crime of violence' under USSG § 4B1.2(a)," *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (citing *inter alia*, *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995)); *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013) ("we analyze a crime of violence under the career-offender guideline just as we do a 'violent felony' under the [ACCA]"); *United States v. Johnson*, 707 F.3d 655, 659 n.2 (6th Cir. 2013) ("A 'crime of violence' under the career-offender provision is interpreted identically to a 'violent felony' under ACCA.") (citation omitted), and, one year prior to Snider's sentencing in April 2008, we held that "Tennessee aggravated burglary represents a generic burglary capable of constituting a violent felony for ACCA purposes." *Nance*, 481 F.3d at 888. Moreover, in granting the certificate of appealability, we relied on ACCA authority, including *Stitt*:

> At the time Snider was sentenced, a crime of violence was defined, among other things, as any offense punishable by imprisonment of more than one year that is arson, burglary of a dwelling, extortion, or involves the use of explosives. USSG § 4B1.2(a)(2) (2010). While we have held that Tennessee's aggravated burglary statute constitutes a crime of violence under the enumerated-offenses clause, *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015), we recently granted en banc review in another case to reconsider whether Tennessee's aggravated-burglary statute qualifies as generic burglary. . . . Because it is unclear whether Snider's aggravated-burglary convictions constitute crimes of violence, reasonable jurists could debate the district court's resolution of these claims.

ECF 8-2, p.2-3. Because we have consistently intermingled our own precedent regarding the wo provisions, and we are free to affirm the district court for any reason supported by the record, *see Clark v. United States*, 764 F.3d 653, 660-61 (6th Cir. 2014), we decline to dismiss Snider's first claim on this basis.

**B.**

Snider's non-constitutional challenge to his advisory guidelines range suffers from a greater defect: it is not cognizable under § 2255. The statute authorizes postconviction relief only when a sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). Thus, § 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involved "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks and citation omitted). This standard is met only by "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks and citation omitted). In other words, not "every asserted error of law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346; *see United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see also United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001) ("Courts have generally declined to collaterally review sentences that fall within the statutory maximum."). The statutory maximum for a violation of 21 U.S.C. § 846 is forty years. *See* 21 U.S.C. § 841(b)(1)(B)(viii).

Although the Supreme Court has not addressed whether an advisory, non-constitutional Sentencing Guidelines case could reach such exceptional levels, *see Hawkins v. United States*, 706 F.3d 820, 829 (7th Cir. 2013) (Rovner, J. dissenting), *opinion supplemented on denial of reh'g*, 724 F.3d 915, it has provided certain guideposts. At one end is *Davis*, which held that § 2255 relief is available for someone whose conviction is based on conduct that is later determined to be non-criminal. *Davis*, 417 U.S. at 346-47. In this situation, "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255." *Id.* (internal

quotation marks and alteration omitted).  At the other end of the spectrum, the Supreme Court has held on several occasions that a district court's failure to follow procedural rules is not tantamount to a complete miscarriage of justice absent prejudice to the defendant.  *See, e.g., Peguero v. United States*, 526 U.S. 23, 24 (1999) (district court's failure to inform the defendant of the right to appeal was not cognizable under § 2255 where the defendant knew about the right); *United States v. Timmreck*, 441 U.S. 780, 784-85 (1979) (collateral relief not available for failure to mention special parole term at Rule 11 hearing); *Hill v. United States,* 368 U.S. 424, 429 (1962) (sentencing judge's failure to ask the defendant if he wanted to speak at his sentencing hearing was not an error of constitutional magnitude cognizable under § 2255).

"Between these limits—punishment for conduct later rendered non-criminal on one end and non-prejudicial procedural errors on the other—" lies *Addonizio*.  *United States v. Foote*, 784 F.3d 931, 937 (4th Cir. 2015).  *Addonizio* held that post-sentencing changes in Parole Commission policies that extended the federal prisoner's sentence beyond the sentencing judge's expectation did not create a cognizable § 2255 claim because the sentence imposed by the district court was "within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid." *Addonizio,* 442 U.S. at 186.  Unlike the decision in *Davis*, which involved "a change in the substantive law that established the conduct for which petitioner had been convicted and sentenced was lawful," the petitioner's challenge in *Addonizio* "did not affect the lawfulness of the judgment itself—then or now." *Id.* at 186-87.

In *Foote*, a case very similar to our own, the Fourth Circuit relied on *Addonizio* in concluding that the defendant-appellant did not have a cognizable § 2255 claim based on a misapplication of a subsequently-nullified career offender designation.  *Foote*, 784 F.3d at 943. The *Foote* defendant was convicted of distributing crack cocaine and classified as a career offender based on two prior North Carolina convictions for possession with intent to sell cocaine. *Id.* at 932-33.  After an intervening change in law, one of his prior drug offenses no longer qualified as a predicate "controlled substance offense" under the career offender guideline, so the defendant sought resentencing via a § 2255 motion.  *Id.* at 934-35.  The Fourth Circuit held that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is

later invalidated does not meet" the "remarkably high bar" for § 2255 relief.  *Id.* at 936.[4]  The *Foote* court observed that the Supreme Court has found a "miscarriage of justice" only if it appears that the petitioner is "actually innocent" of the underlying crime.  *Id.* at 940-41. Furthermore, under the advisory guidelines scheme, a career offender designation is, unlike a statute, only "one part of a series of guidelines meant to *guide* the district court to the proper sentence," from which district courts are free to vary.  *Id.* at 941 (emphasis in original).  The *Foote* court therefore concluded that a mistaken career offender designation is not a "fundamental defect that inherently results in a complete miscarriage of justice."  *Id*. at 940, 942-43.

Like the petitioner in *Foote*, Snider alleges that an intervening change in the law rendered his career offender designation erroneous.  Snider does not allege that he is innocent of the charged offense or the underlying predicate offenses.  He does not rely on any constitutionally prohibited factors.  Snider was sentenced under an advisory guidelines scheme, and the district court applied the 18 U.S.C. § 3553(a) factors at sentencing.  Although the career designation may have affected the ultimate sentence imposed, "it did not affect the lawfulness of the [sentence] itself—then or now."  *Addonizio*, 442 U.S. at 187; *see also Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011) ("A challenge to the sentencing court's guidelines calculation . . . only challenges the legal process used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received.").  Therefore, like the petitioner in *Foote*, Snider is not entitled to § 2255 relief.

In short, no "exceptional circumstances" justify issuance of the writ in this case, especially because, without the career offender designation, Snider's adjusted offense level after the application of various sentencing enhancements was also 34, resulting in an advisory guidelines range of 262 to 327 months.  *See Peugh v. United States*, 569 U.S. 530, 536 (2013)

---

[4]Also like the defendant in *Foote*, Snider has 17 criminal history points without the career offender provision.  *See Foote*, 784 F.3d at 933 n.1  Unlike the *Foote* defendant, whose advisory guidelines range jumped from 151-188 months to 262-327 months with the career offender designation, *id.* at 933*,* the sentence Snider received was within the sentencing advisory guidelines range unenhanced by the career offender status.  *Cf. Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (holding that the defendant's 360-month sentence imposed under a career offender designation was not imposed in excess of statutory authority; noting that the petitioner's sentence was within the sentencing range had the career offender status not been applied).

(noting that the Sentencing Guidelines "should be the starting point and the initial benchmark"; holding that a retrospective increase in an applicable guidelines range created a *constitutional* ex post facto violation). Snider's 300-month sentence is within the middle of that range, which cannot be plausibly characterized as a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346 (internal quotation marks and citation omitted). Snider's misapplication-of-an-advisory-guidelines-range claim is therefore not cognizable under § 2255.

We note that, although not without dissent, every other court of appeals to have looked at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations. *See Foote*, 784 F.3d at 939 ("[T]here is no decision left standing in any circuit whereby a challenge to one's change in career offender status, originally determined correctly under the advisory Guidelines, is cognizable on collateral review. However, we cannot ignore that these decisions are extremely close and deeply divided."); *Spencer v. United States*, 773 F.3d 1132, 1144 (11th Cir. 2014) (en banc); *Hawkins*, 706 F.3d at 824-25.[5]

## C.

Snider also has a free-standing ineffective assistance of counsel claim, which is cognizable under § 2255. *See Massaro v. United States*, 538 U.S. 500, 508-09 (2003). But to prevail, Snider must demonstrate (1) that counsel's representation at sentencing fell below an objective standard of reasonableness and (2) that a reasonable probability exists that, but for his

---

[5]As the government notes in its brief, courts disagree whether errors in calculating a *mandatory* guidelines range (i.e. where a defendant was sentenced before *Booker*) are cognizable under § 2255. *Compare Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (not cognizable), *with United States v. Doe*, 810 F.3d 132, 159 (3d Cir. 2015) (is cognizable), *and Narvaez v. United States*, 674 F.3d 621, 627-29 (7th Cir. 2011) (same). The same is true regarding whether a defendant can use the savings clause of § 2255(e) and 28 U.S.C. § 2241 to challenge a *mandatory* guidelines enhancement when the defendant is foreclosed from bringing a successive § 2255 petition. *Compare Gilbert v. United States*, 640 F.3d 1293, 1307-12 (11th Cir. 2011) (en banc) (holding that mandatory career offender error is not redressable under § 2241); *and In re Bradford*, 660 F.3d 226, 230 (5th Cir. 2011) (same); *with Hill v. Masters*, 836 F.3d 591, 599-600 (6th Cir. 2016) (holding that it is redressable); *and Brown v. Caraway*, 719 F.3d 583, 587 (7th Cir. 2013) (same). Also, some courts have found guidelines claims cognizable where the predicate conviction supporting the guidelines enhancement was later vacated. *See, e.g., Cuevas v. United States*, 778 F.3d 267, 271-72 (1st Cir. 2015); *see also Johnson v. United States*, 544 U.S. 295, 303 (2005). But none of those scenarios are before us.

attorney's unprofessional representation, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). We assess counsel's performance based on "counsel's perspective at the time," *id.* at 689, "considering all the circumstances," *id.* at 688, rather than "in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). We have repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions. *Thompson v. Warden, Belmont Corr. Inst.* 598 F.3d 281, 288 (6th Cir. 2010) (collecting cases); *United States v. Freeman*, 679 F. App'x 450, 453 (6th Cir. 2017). As explained above, given the holdings in *Nance*, 481 F.3d at 888 (Tennessee aggravated burglary constituted a violent felony under the ACCA), and *Arnold*, 58 F.3d at 1121 (a crime of violence under the career offender provision is interpreted identically to a violent felony under the ACCA), trial counsel was not ineffective for failing to foresee that this court would subsequently shift gears years later and eventually decide that (1) the Tennessee aggravated burglary statute is not generic and (2) does not state a crime of violence under the ACCA, let alone the career offender provision (which it still hasn't explicitly done). Stated differently, counsel could have reasonably concluded in 2008 that such a challenge would be unsuccessful. Thus, counsel did not provide constitutionally deficient performance because she failed to assert in 2008 that Snider's Tennessee aggravated burglary convictions are not crimes of violence under U.S.S.G. § 4B.1.

Absent cause, we need not consider prejudice.

**D.**

Finally, because both of Snider's claims on the merits fail, we need not address the government's procedural default argument.

**III.**

For these reasons, the judgment of the district court denying Snider's § 2255 motion is **AFFIRMED**.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting.  The majority holds today that Snider's advisory guideline claim is not cognizable under § 2255 because he was "sentenced under an advisory guidelines scheme," his career offender designation did not affect the "lawfulness" of his sentence, and his guideline range would have been the same absent the career offender designation.  Op. at 10–11.  Because I believe there are instances in which, despite being sentenced under the advisory guidelines, a defendant who has been incorrectly designated as a career offender may still bring a claim under § 2255, I respectfully dissent.

## I.  LEGAL FRAMEWORK

Under 28 U.S.C. § 2255, a prisoner may collaterally attack his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962).

Although the language of § 2255 provides for collateral relief when a sentence generally "is otherwise subject to collateral attack," in a number of opinions (primarily from the 1960s and 1970s), the Supreme Court has circumscribed the scope of these motions.  Specifically, when a § 2255 claim does not assert a constitutional or jurisdictional error, the Court has stated that the claim is generally not cognizable unless the error involves "a fundamental defect which inherently results in a complete miscarriage of justice."  *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted).  In *Davis*, the Supreme Court determined that when a defendant's conviction no longer constituted a crime, he *was* entitled to collateral relief under § 2255.  *Id.* at 346–47.  Additionally, the Court has found that non-prejudicial "procedural" errors are not the type of "exceptional circumstances," *Hill*, 368 U.S. at 428, warranting relief under § 2255.  *See Peguero v. United States*, 526 U.S. 23, 24 (1999) (failing to inform the defendant of his right to appeal where the defendant nonetheless knew of his right);

*United States v. Addonizio*, 442 U.S. 178, 186–87 (1979) (determining a claim based on a later updated parole regulation was non-cognizable when the regulation interfered only with the sentencing court's subjective expectation of the time the petitioner would spend in prison); *United States v. Timmreck*, 441 U.S. 780, 784–85 (1979) (finding noncognizable a formal violation of Federal Rule of Criminal Procedure 11 at a guilty plea hearing); *Hill*, 368 U.S. at 429 (finding noncognizable the failure to ask if the counseled defendant wanted to speak at his sentencing hearing).

As applied to miscalculations of the advisory career offender guidelines, however, the reasoning and holdings of these cases are distinguishable. Although these cases establish "miscarriage of justice" as the applicable standard for non-jurisdictional or non-constitutional § 2255 motions, the holdings are limited and do not suggest that defendants who have incorrectly been designated as career offenders under the advisory guidelines may never bring § 2255 motions.

First, *Hill*, *Timmreck*, and *Peguero* all considered narrow, procedural errors which did not cause the defendant any prejudice. *See Davis*, 417 U.S. at 346 (noting that in *Hill* the Court had held collateral relief was not available based on a failure to follow a formal requirement "in the absence of any indication that the defendant was prejudiced by the asserted technical error"); *Peguero*, 526 U.S. at 24 ("We hold that a district court's failure to advise the defendant of his right to appeal [did] not entitle him to habeas relief if he knew of his right and hence suffered no prejudice from the omission."); *Timmreck*, 441 U.S. at 784 (finding no cognizable claim when the defendant was aware of his rights and would not have acted differently even if the particular procedural rule had been followed). None of these cases considered instances in which, due to a clear legal error at sentencing, a criminal defendant was sentenced to significantly increased prison time, thus establishing the necessary prejudice. *See, e.g.*, *Spencer v. United States*, 773 F.3d 1132, 1148 (11th Cir. 2014) (Wilson, J., dissenting) (arguing the defendant should be permitted to bring his § 2255 claim and noting the defendant had clearly shown he had been prejudiced by the sentencing guideline error as the judge explained that, absent the career offender enhancement, the defendant would be looking at half the prison time); *Hawkins v. United States*, 706 F.3d 820, 821 (7th Cir. 2013) (explaining that that without the enhancement,

the defendant's range was between 15 and 30 months and that with the designation, the guideline range jumped to 151 to 188 months); *id.* at 827 (Rovner, J., dissenting) (noting this enhancement was prejudicial to the petitioner).

Second, as the Court noted in *Hill*, *Timmreck*, and *Peguero*, the determination of whether a certain error constitutes a "miscarriage of justice" is largely fact specific. *See Hill*, 368 U.S. at 429 ("Whether § 2255 relief would be available if a violation of Rule 32(a) occurred *in the context of other aggravating circumstances* is a question we . . . do not consider." (emphasis added)); *see also Peguero*, 526 U.S. at 27, 29 (noting "[a] violation of Rule 32(a)(2), however, does not entitle a defendant to collateral relief *in all circumstances*" and determining the defendant was not prejudiced when he had independent knowledge of his right to appeal (emphasis added)); *Timmreck*, 441 U.S. at 784–85 (determining it was "unnecessary to consider whether § 2255 relief would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances"). Outside these specific instances (i.e., without additional "aggravating circumstances"), the Court in *Hill*, *Timmreck*, and *Peguero* expressed no opinion as to whether other, more significant, sentencing errors could constitute a miscarriage of justice. Indeed, by engaging in a more fact intensive examination, the Court endorsed a limited, rather than broader, cognizability analysis.

The Court's decision in *Addonizio* is similarly narrow. Specifically, the Court examined whether "[t]he claimed error here—that the judge was incorrect in his assumptions about the future course of parole proceedings—does not meet any of the established standards of collateral attack." 442 U.S. at 186. In that limited context, the Court concluded "there is no basis for enlarging the grounds for collateral attack to include claims *based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge*." *Id.* at 187 (emphasis added); *see also Spencer*, 773 F.3d at 1165 (Rosenbaum, J., dissenting) ("*Addonizio* holds only that a lawful sentence that is imposed because of a judge's incorrect subjective expectation of the actual amount of time that a defendant will serve in prison under the judge's sentence—and *only* from a sentencing judge's frustrated subjective intent—does not result in a complete miscarriage of justice and is not cognizable under § 2255."). Unlike the

subjective frustration at issue in *Addonizio*, an incorrect career offender designation under the advisory guidelines is clearly based on an "objectively ascertainable error."

The fact that the ultimate sentence imposed in *Addonizio* "did not affect the lawfulness of the judgment itself—then or now" was not wholly determinative of the petitioner's ability to bring the claim. 442 U.S. at 187. Although the Court determined that the sentence in *Addonizio* was not unlawful, it nonetheless went on to consider whether, despite the lawfulness of the sentence, the defendant could still receive relief under § 2255. *Id.* at 187–90 (discussing why the subjective intent of a judge cannot form the basis of a cognizable § 2255 claim). Such an examination would be unnecessary if the Court had adopted a per se rule that all "lawful" sentences, such as an incorrect advisory career offender designation, are incapable of collateral attack. *See Spencer*, 773 F.3d at 1147 (Wilson, J., dissenting); *see also Johnson v. United States*, 544 U.S. 295, 298 (2005) (implicitly recognizing a § 2255 claim when the sentence imposed was "lawful" at the time and became subject to collateral attack only after the predicate offenses were vacated by the state court in a separate proceeding).

Finally, case law in this Circuit does not preclude all advisory career offender guideline claims under § 2255. For instance, in *Gibbs v. United States*, we held that a criminal defendant could not look to guideline miscalculations to excuse a procedurally defaulted claim based on "actual innocence." 655 F.3d 473, 478 (6th Cir. 2011). Although the court ultimately determined that mistakes in sentencing guidelines did not rise to the level of "actual innocence" required to excuse the defendant's procedural default, in part because the guidelines are advisory, the court was not presented with the question I consider today: whether, despite the advisory nature of the guidelines, a clear miscalculation can ever create a miscarriage of justice under § 2255. Consequently, the reasoning of *Gibbs* is similarly limited as the cases noted above.[1]

---

[1]In the majority's discussion of *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), the majority quotes *Foote*'s conclusion that the Supreme Court has found a "miscarriage of justice" only if the petitioner was "actually innocent" of the underlying crime. Op. at 10. However, this ignores the Court's opinion in *Johnson v. United States*, in which the Court implicitly recognized a claim for relief under § 2255 when the defendant's predicate state offenses were vacated not because he was "actually innocent" of them but because he had not sufficiently waived his right to counsel. 544 U.S. 295, 301 (2005).

Similarly, our Circuit has expressly recognized that sentencing errors may constitute "miscarriages of justice," despite producing sentences below the statutory maximum. *See Hill v. Masters*, 836 F.3d 591, 596–97, 600 (6th Cir. 2016) (determining that a prisoner's sentence could constitute a "miscarriage of justice" warranting a 28 U.S.C. § 2241 petition, even though the defendant's pre-*Booker* sentence was below the statutory maximum); *Oliver v. United States*, 90 F.3d 177, 179 (6th Cir. 1996) (implicitly recognizing a § 2255 claim regarding a pre-*Booker* sentence when the court examined the merits of the defendant's sentencing claim). Similarly, in *United States v. Behrens*, the defendant's § 2255 claim was cognizable when, despite being sentenced *below* the statutory maximum, neither the defendant nor his attorney were present at the defendant's final sentencing hearing, in violation of Federal Rule of Criminal Procedure 32(a). 375 U.S. 162, 163–66 (1963). This was true despite the fact that, when the defendant was sentenced in the 1960s, there were no mandatory guidelines and sentences were firmly within the discretion of the district court. *See Beckles v. United States*, 137 S. Ct. 886, 893 (2017) (noting that before the guidelines became mandatory, "Congress historically permitted district courts wide discretion to decide whether the offender should be incarcerated and for how long" (internal quotation marks omitted)); *see also Spencer*, 773 F.3d at 1158 (Jordan, J., dissenting) ("The Supreme Court in *Behrens*, therefore, used § 2255 to set aside a sentence below the statutory maximum (i.e., a sentence the majority would characterize as 'lawful') for a non-constitutional violation (i.e., the violation of a federal rule)."). Finally, a rule which dictates that a sentence may be challenged under § 2255 only if it exceeds the statutory maximum would ignore the plain language of 28 U.S.C. § 2255, which permits a defendant to challenge his sentence by asserting, among other things, that the sentence was "in excess of the maximum authorized by law" *or* was "otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Because I conclude that neither the Supreme Court nor previous cases in this Circuit categorically preclude advisory career offender guideline claims under § 2255, I now consider whether, in certain circumstances, a defendant's erroneous designation as a career offender under the advisory guidelines can create a miscarriage of justice. I conclude it can.

## II. COGNIZABILITY OF CAREER OFFENDER CLAIMS

The proper scope of § 2255 has produced closely divided resolutions in our fellow Circuits. Although four Circuits have determined that defendants may not collaterally attack their advisory guideline sentences under § 2255, three of those opinions were heavily contested. *See Spencer*, 773 F.3d at 1135, 1145, 1149, 1156, 1164 (five to four decision); *Hawkins v. United States*, 706 F.3d at 825 (J. Rovner, dissenting in a three-judge panel); *Sun Bear v. United States*, 644 F.3d 700, 701, 707 (8th Cir. 2011) (six to five decision); *see also United States v. Foote*, 784 F.3d 931, 939 (4th Cir. 2015) ("[W]e cannot ignore that these decisions are extremely close and deeply divided."). Moreover, two of the cases—*Spencer* and *Sun Bear*—were decided *en banc* after a previous panel had granted the defendant relief under § 2255. *See Spencer v. United States*, 727 F.3d 1076, 1087–88 (11th Cir. 2013); *Sun Bear v. United States*, 611 F.3d 925, 930–32 (8th Cir. 2010). I concur with the reasoning articulated in these carefully considered dissents, as well as the case law of this court and the Supreme Court, in my analysis today.

### A. *Johnson v. United States*

Similar to the paths taken by the four dissenting judges in *Spencer*, I begin by examining the Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295 (2005).[2] In *Johnson*, the Court considered the appropriate statute of limitations for a prisoner attempting to attack his sentence collaterally after the predicate state offenses underlying his sentence enhancements were vacated by the state court. *Id.* at 298. Noting that the Court's precedent assumes "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated," *id.* at 303, the Court implicitly recognized the validity of a § 2255 claim when the defendant's enhanced sentence was later shown to be in error. *Id.*; *see also Spencer*, 773 F.3d at 1168 n.2 (Rosenbaum, J., dissenting) ("[I]f Johnson's claim of Sentencing Guidelines error were not cognizable on a § 2255 petition, the . . . Court's opinion . . . would be *dicta* . . . because it would never be necessary to determine [the appropriate statute of limitations]

---

[2]Although the majority here does not address *Johnson* at length, I believe *Johnson* offers an important foundation from which to examine the type of claim that Snider attempts to raise.

if a challenge to the application of career-offender status under the Sentencing Guidelines were not cognizable.").

Although other courts have used the reasoning of *Johnson* to distinguish guideline claims based on vacatur of the predicate crime with an advisory guideline calculation error, *see, e.g.*, *Foote*, 784 F.3d at 936 n.5; *Spencer*, 773 F.3d at 1143, I do not believe such a distinction is meritorious or just.  As Judge Beverly Martin succinctly put it:

> [i]t seems to me to draw an arbitrary line to say (on the one hand) that a prisoner may use § 2255 to collaterally attack his career offender status if that prior conviction has been vacated . . . but not (on the other) if that same prior conviction was never a qualifying conviction in the first place—in light of an authoritative statutory interpretation by the Supreme Court.

*Spencer*, 773 F.3d at 1153 (Martin, J., dissenting) (internal citation omitted).  In both cases, it is clear that the individual is not, in fact, a career offender.  *See id.* (arguing that individuals who have been incorrectly designated as career offenders may be more deserving of § 2255 relief because, unlike Johnson, their designation as career offenders was incorrect the day they were sentenced).  Furthermore, although in one scenario the predicate offense is now legally non-existent, resentencing courts would be incapable of using the predicate offense for either defendant to designate him as a career offender.  *See Spencer*, 773 F.3d at 1160 (Jordan, J., dissenting) ("Under either scenario, the pertinent prior conviction cannot lawfully be used to establish career offender status, and the sentence imposed constitutes a miscarriage of justice.").  In short, neither offense would constitute a "predicate offense" on resentencing.  And although there may be a distinction between factual innocence (for example the vacatur of a conviction) and legal innocence (statutory reinterpretation of the sentencing guidelines), "this distinction is nowhere found in § 2255."  *Id.* at 1153 (Martin, J., dissenting).  Consequently, not only does *Johnson* suggest that generally sentencing errors may be cognizable under § 2255, but also, the logical extension of its reasoning supports the proposition that inaccurate career-offender designations can be similar in kind to the error in *Johnson*, and, therefore, cognizable under § 2255.

**B.  Controlling Authority of the Guidelines**

The majority suggests that, because the guidelines are now "advisory" and cannot dictate a certain sentence, misapplication of them in Snider's case is not a sufficiently extreme injustice to form the basis of a § 2255 claim.  I believe that in certain scenarios, such a characterization is largely speculative and completely unresponsive to the reality of federal sentencing today.

First, although the guidelines are advisory following *Booker*, they often still have an outsized impact on criminal sentencings.  Specifically, the guidelines remain "the starting point and the initial benchmark" for sentencing, *Gall v. United States*, 552 U.S. 38, 49 (2007), and thus constitute the "lodestar" for sentencing judges, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).  Because district courts "*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process," *Molina-Martinez*, 136 S. Ct. at 1345 (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)), "[i]n most cases, it is the range set by the Guidelines, not the minimum or maximum term of imprisonment set by statute, that specifies the number of years a defendant will spend in prison," *Beckles v. United States*, 137 S. Ct. 886, 900 (2017) (Sotomayor, J., dissenting).  Thus, when "the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*." *Molina-Martinez*, 136 S. Ct. at 1345 (quoting *Peugh*, 569 U.S. at 542); *see also Beckles*, 137 S. Ct. at 901 (Sotomayor, J., dissenting) (explaining a defendant "must take the range as the starting point for his request" for a sentencing deviation); *Hawkins*, 706 F.3d at 826–27 (Rovner, J., dissenting); *Spencer*, 773 F.3d at 1161 (Jordan, J., dissenting) ("We routinely tell district courts that we ordinarily expect a sentence within the Sentencing Guidelines to be reasonable, and it is folly to pretend that such pronouncements do not have an impact on sentencing decisions in the trenches." (internal citation omitted)).  As the Supreme Court has noted, "[i]n most cases district courts continue to impose either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Molina-Martinez*, 136 S. Ct. at 1346 (internal quotation marks omitted).  Consequently, the Supreme Court has recognized that, on direct review, an incorrect guideline calculation can generally impact a defendant's "substantial rights for purposes of obtaining relief

under" plain-error review, *even if* the sentence was within the correct guideline range.  *Id.* at 1349; *accord United States v. Susany*, 893 F.3d 364, 368 (6th Cir. 2018).

This impact is particularly relevant to individuals designated as career offenders, as "[t]he imposition of the career offender status brand[s criminal defendants] as . . . malefactor[s] deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual . . . . No amount of evidence in mitigation or extenuation could erase that branding." *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011); *see also Beckles*, 137 S. Ct. at 900 n.1 (Sotomayor, J., dissenting) (noting that when lower courts ordered resentences based on the (at the time) inapplicability of the residual clause of the career offender guidelines, sentences were usually much lower); *Molina-Martinez*, 136 S. Ct. at 1346 (noting that "[i]n less than 20% of cases since 2007 have district courts imposed above- or below-Guidelines sentences absent a Government motion" (internal quotation marks omitted)).  Requiring a defendant who, based on an unequivocal change in the law, is no longer a "career offender" nonetheless to carry that designation often creates very real and cognizable consequences.  *See, e.g.*, *Spencer*, 773 F.3d at 1148 (Wilson, J., dissenting) (noting the defendant clearly showed he had been prejudiced by the guideline error as the district judge made clear that, absent the enhancement, the defendant would be looking at half the prison time); *Hawkins*, 706 F.3d at 821 (explaining that without the enhancement, the defendant's range was between 15 and 30 months and that with the designation, the guideline range jumped to 151 to 188 months).

Furthermore, although some courts have determined that advisory calculation claims are not cognizable because the defendant would be sentenced to the same original sentence, *see, e.g.*, *Spencer*, 773 F.3d at 1143, I do not believe this possibility means they are automatically excluded from relief under § 2255.  Specifically, to rely on the possibility that an offender might be resentenced to the same sentence previously imposed is too speculative a consideration to determine whether all career-offender guideline claims are cognizable.  *See Spencer*, 773 F.3d at 1178 (Rosenbaum, J., dissenting) ("[A]ttempting to divine any sentence imposed on resentencing . . . constitutes pure speculation."); *Hawkins*, 706 F.3d at 826 (Rovner, J., dissenting) ("[T]o assume that the same sentence would have been imposed in the absence of the career offender provision . . . is frail conjecture that evinces in itself an arbitrary disregard of the petitioner's

right to liberty." (quoting *Narvaez*, 674 F.3d at 629)). This is particularly true since, as Judge Robin Rosenbaum noted in *Spencer*, the defendant in *Johnson* could also have been given the same sentence on remand, as the court likely could have considered the vacated state-court convictions independently because Johnson had not been found actually innocent of those crimes. *Spencer*, 773 F.3d at 1177 (Rosenbaum, J., dissenting). Conversely, given the importance of the sentencing guidelines for career offenders particularly, there *is* evidence suggesting that individuals granted § 2255 relief will be resentenced to a lower guideline range, thus enabling them to advocate for sentences from a more appropriate starting point. *See Beckles*, 137 S. Ct. at 900 n.1 (Sotomayor, J., dissenting) (noting that in resentencings under the career-offender guidelines most defendants received lower sentences). Thus, although I do not believe the mere distinction between mandatory and advisory guidelines should automatically doom advisory guideline claims brought under § 2255, in any case the advisory guidelines have an extraordinary impact and in certain scenarios the same "miscarriages of justice" may occur with advisory guideline errors if left uncorrected as with mandatory guideline errors. *See Hill*, 836 F.3d at 596–97, 600 (determining that a prisoner's mandatory-guideline sentence could constitute a "miscarriage of justice" warranting a 28 U.S.C. § 2241 petition); *Narvaez*, 674 F.3d at 623 (concluding that an improperly calculated pre-*Booker* sentence could form the basis of a cognizable § 2255 claim).

## C. Justice and Finality

Finally, I briefly note that a decision which holds that § 2255 claims based on career-offender guideline miscalculations are categorically unavailable would undermine the expectation of justice and fairness that all individuals are entitled to have in the criminal justice system and, furthermore, would not support the concerns of finality often used to justify such an exclusion. *See, e.g.*, *Hawkins v. United States*, 724 F.3d 915, 918 (7th Cir. 2013) ("Judicial systems that ignore the importance of finality invite unreasonable delay in the disposition of cases.").

The justification of finality is generally predicated on four considerations: "(1) to build confidence in the integrity of the judicial system; (2) to minimize administrative costs and delay; (3) to avoid spoliation of evidence; and (4) to honor comity." *Gilbert v. United States*, 640 F.3d

1293, 1334 (11th Cir. 2011) (Martin, J., dissenting). I do not believe these factors apply in such a way as to bar all individuals from relief under § 2255. For instance, in a case in which a defendant was incorrectly designated as a career offender based on later-determined judicial error, the "integrity of the judicial system" would hardly be supported by requiring that defendant to remain in prison, particularly if he has consistently (and correctly) argued as to the inapplicability of the enhancement. *See Spencer*, 773 F.3d at 1154 (Martin, J., dissenting); *Sun Bear*, 644 F.3d at 712 (Melloy, J., dissenting) ("[D]enying relief does not build confidence in our court system because this looks to the world like a court refusing to acknowledge or make amends for its own mistake." (quoting *Gilbert*, 640 F.3d at 1334 (Martin, J., dissenting))). Similarly, because these cases present purely legal questions (whether an individual is a "career offender" under the guidelines), there is no concern that evidence will have been lost or destroyed; in most cases, the defendant will still be guilty and his criminal history will remain the same. *See Spencer*, 773 F.3d at 1154 (Martin, J., dissenting). And because these cases involve federal sentencing statutes and guidelines, "[t]he contrary result dictated by the majority's holding promotes finality at the expense of justice in a situation where, unlike most AEDPA cases, there are no concerns of comity or federalism." *Sun Bear*, 644 F.3d at 707 (Melloy, J., dissenting). Finally, in cases where the career-offender enhancement has drastically increased an individual's sentence, administrative costs are hardly saved by incarcerating the defendant for more time than he would otherwise be required to serve. *Spencer*, 773 F.3d at 1154 (Martin, J., dissenting). As Judge James Hill eloquently noted in his dissent in *Gilbert v. United States*, "I recognize that without finality there can be no justice. But it is equally true that, without justice, finality is nothing more than a bureaucratic achievement." 640 F.3d at 1337.

For all the reasons stated above, I do not believe that all advisory guideline claims are non-cognizable under § 2255; rather, I conclude that there are plausible scenarios in which a defendant's incorrect designation as a career offender under the advisory guidelines would necessarily create a "fundamental miscarriage of justice." Consequently, I respectfully dissent.